## C. S. WILLIS v. WESTERN UNION TELEGRAPH COMPANY.

(Filed 24 March, 1909.)

1. Telegraph—Pleadings—Allegation of Ownership.

An allegation in the complaint that a telegram was delivered to defendant telegraph company at B. for transmission to R., which defendant undertook and agreed to transmit accordingly, is a distinct averment that defendant owned and operated the line from B. to N., an intermediate station, through which it was forwarded to its destination.

2. Telegraph—Pleadings—Evidence—Averments—No Denial— Amendments—Questions for jury.

A complaint and answer is some evidence that a telegraph company owned a telegraph line over which a message was forwarded by it, when the former contains a distinct allegation of ownership, which the latter does not deny; and the fact that subsequently an amendment to the answer was allowed and made does not render the evidence incompetent, but affects only its weight or sufficiency to prove the fact.

3. Telegraphs—Negligence—Delivery—Evidence—Questions for Jury.

A telegram was incorrectly addressed to 23 East Marshall Street, in Richmond, Va. It was received in Richmond at 3:30 P. M., the 27th, and the messenger attempted to deliver it at 23 East Marshall Street and at 23 West Marshall Street, and unsuccessfully inquired where the addressee could be found. He did not inquire at the post office. He delivered nine other messages on that trip, and reported at defendant's office at 6 o'clock P. M. Unavailing inquiries were made of several persons there, and the city directory was consulted. A service message, asking for a better address, was sent to the initial point, which was delayed until the next morning, owing to the observance of office hours. The message was delivered at 10 A. M., the 28th, at the address as corrected: *Held*, evidence of negligence in the delivery sufficient to go to the jury.

**4. Instructions—General—Sufficiency.**

Instructions of law which are correct in their general application to the evidence are sufficient, in the absence of requests for specific instructions.

CONNOR, J., dissents. BROWN, J., concurs in dissenting opinion.

ACTION tried before *O. H. Allen, J.,* and a jury, at Fall Term, 1908, of CARTERET.

This action was brought to recover damages for failing to deliver a telegram. It appears that on 27 July, 1907, at 3 o'clock P. M., Elvin Willis, a brother of the plaintiff, delivered to the defendant, at Beaufort, N. C., for transmission to the plaintiff, C. S. Willis, who lived in Richmond, Va., the following message: "C. S. Willis, 923 East Marshall Street, Richmond, Va. Papa died at 10:30 A. M. Elvin." The message was not delivered until 10 o'clock A. M. on 28 July, 1907. It was received by the defendant's operator at Richmond at 3:30 P. M. on the day it was sent. The message was sent from Beaufort by way of Newport, and relayed at the latter place. When received by the defendant's operator at Newport, the address had been changed from "923 Marshall Street" to "23 Marshall Street," and the evidence tended to show that this change was made after the message had been received by the operator at Beaufort—in other words, on the line between Beaufort and Newport. The defendant contended that it was not liable by reason of this fact, as it did not own or operate that line, but that it was owned and operated as an independent line by Thomas Duncan, and there was evidence in the case to sustain this contention. It appears, though, that in the complaint, filed at Fall Term, 1907, the plaintiff alleged that the defendant owned and operated the said line as a part of its line between Beaufort, N. C., and Richmond, Va., and that it undertook to transmit the message from Beaufort to Richmond. These allegations were made in sections 1, 2 and 3 of the complaint, and they were not denied in the answer, filed at Fall Term, 1907, though the other allegations of the complaint were. At Fall Term, 1908, by leave of the court, the defendant filed an amended answer, in which the allegations as to the ownership and control of the telegraph line from Beaufort to Newport was denied, and evidence was introduced at the trial which tended to show that said

line was not owned or controlled by defendant, but by Thomas Duncan. The plaintiff put in evidence the complaint and the first answer for the purpose of showing that the defendant did own and control the line from Beaufort to Newport. The defendant requested the court to charge the jury "That, if they believed the evidence, the line from Beaufort to Newport was not owned and operated by the defendant, and it would not be liable for any error which occurred on that line." This instruction the court declined to give, but charged that "It is a question for the jury to find, from the greater weight of the evidence, whether the line from Beaufort to Newport was owned and operated by the defendant, and if the jury found that the line from Beaufort to Newport was not owned or operated by the defendant it would not be liable for any error that may have occurred on that line, the burden of proof as to who owned the line from Beaufort to Newport being on the plaintiff." Defendant excepted.

The defendant requested the court to charge the jury that the defendant would not be responsible for any error that may have occurred in the transmission of the telegram before the same reached its line; and if the jury should find from the evidence that the telegram was delayed by reason of an error in the transmission and change of address before it reached the line of the defendant, then the jury would answer the first issue "No." The court, in response to the prayer, instructed the jury as follows: "The defendant would not be responsible for any error that may have occurred in the transmission of the telegram before the same reached its line. If the jury should find from the evidence that the telegram was delayed by reason of an error in transmission and the change of the address before it reached the line of the defendant, and such delay was the cause of the failure of the plaintiff to receive the message in time to have attended the funeral, then they will answer the first issue 'No.' "

The evidence tended to show that when the message was received at Richmond, the operator handed it to a messenger for delivery to the sendee, and that he used a bicycle in delivering messages. The messenger, who had nine other messages to deliver, went to the place described in the message, No. 23 East Marshall Street, and also to 23 West Marshall Street, and in-

quired for C. S. Willis, but found that he did not live at either place. He also inquired at each house as to where Willis could be found, but received no information. The messenger returned to the office at 6 o'clock P. M., the same day, as soon as he had delivered the other messages, and handed the message for Willis to the operator, to whom he reported the facts. The operator examined the city directory, and, not finding Willis' name, inquired of other persons by that name about him. Failing to get any information, he wired back for a better address, but his service message was not received at Newport in time to wire to Beaufort and receive an answer before the time for closing the office, which was 9 o'clock P. M. A message was received at Newport from Beaufort giving the correct address that night, but after office hours, and it was not forwarded until the next day. The message from Newport to Richmond had to be sent *via* New Bern and relayed at that place, as the main or direct line to Richmond could not be used, "it being in trouble," as the operator testified. If it had been in order, the corrected message could have been sent to Richmond that night. It could not be sent by New Bern, as the office there had been closed for the night. There was evidence that no inquiry was made at the post office at Richmond for C. S. Willis, who lived at 923 Marshall Street, nor was there any further search for him. The night clerk at Richmond mailed a postal card to Willis. The plaintiff could have left Richmond and attended the funeral of his father if the message had been delivered to him at any time before 8 P. M. on the day it was sent, and would have left by the first train.

The court charged the jury as to what would constitute negligence in failing to deliver the message after it was received by defendant, substantially, as follows: If the defendant did not operate the Beaufort and Newport line and the jury should find that an error in the message occurred on that line, and at the time the message was received by defendant company it had an incorrect address and the one at which defendant undertook to deliver the telegram, then the jury will consider whether or not the defendant company was guilty of negligence after the telegram reached its line at Newport; and if in the exercise of ordi-

nary care and diligence the defendant could have gotten the correct address and delivered the telegram to plaintiff, so that he could have left Richmond on 27 July and reached home in time for the funeral, and defendant failed to do so, it was guilty of negligence, and the jury will answer the first issue "Yes." Defendant excepted to this instruction.

There was evidence as to plaintiff's mental anguish and damages.

The court having refused to charge, as requested, that there was no evidence of any negligent delay in transmitting and delivering the telegram, and that the jury should answer the first issue "No," the defendant excepted.

At the close of the testimony the defendant moved to nonsuit the plaintiff. The motion was refused, and the defendant excepted.

There was a verdict for the plaintiff, upon which judgment was entered, and the defendant appealed.

*Abernethy & Davis* for plaintiff.
*Moore & Dunn* for defendant.

WALKER, J., after stating the case: The plaintiff alleged in his complaint that the telegram was delivered to the defendant at Beaufort, N. C., for transmission to him at Richmond, Va. This was a clear and distinct allegation that the defendant was at the time the owner of the telegraph line between Beaufort and Newport, for this was a part of the line from Beaufort to Richmond, and the pleadings and facts show that this fact was well known to the defendant. It is also alleged that the defendant was engaged in the business of transmitting messages from Beaufort to Richmond, and received the message in question at Beaufort and undertook to transmit and deliver it to the plaintiff at Richmond. The message, it appears, was actually sent by way of Newport and over the Beaufort and Newport line. Those allegations, which were made in sections 1, 2 and 3 of the complaint, were not denied in the first answer of the defendant, which was filed 25 January, 1908, and no reference was made to them, although the allegations of the other sections of the complaint were specially denied. If there had been no amended answer the allegations of the first three sections of the complaint would

be deemed to be admitted, and the defendant would consequently be liable for any error in transmitting the message from Beaufort to Newport on its way to Richmond which occurred on that line. The language of the statute is that "Every material allegation of the complaint not controverted by the answer shall, for the purposes of the action, be taken as true." Revisal, sec. 503. When the plaintiff alleged, substantially, though very plainly, that the defendant was the owner of the line from Beaufort to Newport, and also alleged, in so many words, that it received the message at Beaufort and agreed to transmit and deliver it to the plaintiff, the defendant was called upon to deny the allegation, if not true, and by not doing so it tacitly admitted the truth of it. One of the fundamental maxims of the law is that silence implies consent. *(Qui tacet consentire videtur.)* For instance, where there is a duty to speak, and the party upon whom this duty rests does not, an assent may be inferred from his silence. *Russell v. Thornton,* 4 H. and N., 798, per *Bramwell, J.;* Broom's Legal Maxims (8th Ed.), 786. In this case there was a verified complaint, containing the material allegation that the plaintiff owned the Beaufort and Newport line and had undertaken to transmit the message, not from Newport to Richmond, as now contended and as averred in the defendant's amended answer, but from Beaufort to Richmond. It was the defendant's duty to deny this allegation, if it was not true, as it vitally affected the question of its liability in one aspect of the case. Having chosen to be silent when it had the opportunity to traverse the allegation, we must hold that the complaint and first answer constituted some evidence from which the jury might reasonably infer the ownership by the defendant of the line from Beaufort to Newport. In *Perry v. Manufacturing Co.,* 40 Conn., 317, the Court say: "Admissions by a party or by an authorized agent, either in court or out, may be given in evidence; but the circumstances surrounding the admission, the purposes for which it was made, and the conditions attached to it, may be fully shown. It may not infrequently happen that a party will not be bound by an admission and will not be estopped from denying its truth. And in view of the showing on both sides, allowing each party to prove the whole truth, it will be for the triers to determine how the proof stands on the facts in

controversy, on which the admission is claimed to bear. These principles were acted on substantially in the court below. They seem to us just and reasonable and in harmony with the law of evidence." See, also, *Pope v. Allis,* 115 U. S., 363, where many cases are cited in support of the competency of a pleading in an action as evidence against the party filing it, even where he had no personal knowledge of the facts alleged, but made his averment on information and belief. The case of *Avery v. Stewart,* 136 N. C., 426, would seem to be directly in point. The fact that the defendant afterwards filed an amended answer and denied that it was the owner of the Beaufort and Newport line does not affect the competency of the evidence, but merely detracts from its weight or its sufficiency to prove the fact now in issue. See, also, 8 Enc. of Pl. and Pr., p. 27, and notes. *McMillan v. Gambill,* 115 N. C., 352; 11 Am. and Eng. Enc. (2d Ed.), 488. It would seem unreasonable that while the silence of a party when called upon in a conversation to speak is receivable in evidence against him, an answer which is deliberately prepared and verified by the oath of the defendant in response to a demand for the exact truth should be incapable of probative force. Candor and frankness required the defendant to answer every material allegation well pleaded, and any failure to deny or evasion by him or suppression of the truth should be considered as some evidence against him of the truth of the allegation. Such conduct is admissible as evidence, although it may be explained and is not conclusive.

We think there was some evidence of negligence in failing to deliver the message after it was received at Richmond. The court charged the jury substantially that if the defendant's servants failed to exercise ordinary care in attempting to deliver the message, and if by the exercise of such care the message could have been delivered in time for the plaintiff to have reached his home and attended the funeral of his father, there was negligence. This instruction is sustained by the case of *Hendricks v. Telegraph Co.,* 126 N. C., 304. See, also, *Lyne v. Telegraph Co.,* 123 N. C., 129. The charge of the court was very general, it is true, but it is sufficient, in the absence of any special prayer for a more specific instruction.

The motion to nonsuit was properly refused, as there was some evidence of negligence for the consideration of the jury under the instruction of the court.

It is not necessary to discuss the other assignments of error. We have carefully examined them and do not find any error in the rulings to which the defendant excepted.

No Error.

CONNOR, J., dissenting: Plaintiff shows, without contradiction, that the telegram was written by his brother, addressed to him, at "923 East Marshall Street, Richmond, Va.," and delivered to the operator at Beaufort. He then introduced Miss Lucy Edwards, who testified that "she was working for defendant company and the Beaufort and Newport Telegraph Company at Newport; that she transmitted a message similar to the one offered in evidence; that she received the message on the Beaufort and Newport line, and when it was received it was addressed to 23 East Marshall Street. Mr. Duncan is the owner of the Beaufort and Newport line, and I call it the Duncan line, and I received compensation from him for my services." The Western Union tariff book shows that the Beaufort and Newport line is an entirely different line. At the time the original telegram was received from Beaufort by her it was addressed to plaintiff, at 23 East Marshall Street, Richmond, Va. Defendant has no office at Beaufort, as she understood it. There was no Western Union operator at Beaufort. The plaintiff introduced the telegram addressed to and received by him in Richmond, "23 East Marshall Street." The message was sent from Newport immediately, and it is conceded that the delay in delivering the message in Richmond was caused by the mistake in the address. There was no other evidence on the part of plaintiff in regard to the place at which the mistake occurred. The evidence of Miss Edwards was corroborated by defendant's witnesses. There is, upon this testimony, no possible room for doubt that the Beaufort and Newport line was entirely independent of defendant company, and that the mistake occurred on that line. There is not a scintilla of evidence to the contrary. Why, then, was defendant not entitled to the instruction asked? Plaintiff had made out a perfect case against the Beaufort and Newport line,

exonerating defendant from any liability for the mistake. When the complaint was filed plaintiff alleged that defendant was conducting the business of receiving and transmitting messages between Beaufort and Richmond, and that on 27 July plaintiff's brother filed with defendant at Beaufort the telegram, etc.; that it negligently failed to deliver the message in time for plaintiff to attend his father's funeral, etc. Defendant, at the return term, answered, denying the allegations in regard to negligence, etc., and omitted to make answer to the other allegations. At the next term defendants obtained from the court leave, upon terms, paying cost, etc., to file an amended answer. Pursuant to said permission, defendant filed an answer denying that it had any office at Beaufort or that it received any message at that place for transmission. The amended answer, in this respect, was in exact accord with plaintiff's proof. The original answer was introduced as evidence to show that, in truth, notwithstanding plaintiff's evidence, defendant did receive the message at Beaufort, and the jury were permitted to find the fact. The plaintiff recovers a verdict and damages in direct contradiction of his own proof, because the counsel for defendant omitted in the original answer to deny the allegation. It was permitted to file the amended answer, and did so, alleging *just what plaintiff proved.* I do not deny that admissions in an answer, although afterwards cured by amendment, may be introduced in evidence when the truth of the matter alleged in the answer is in controversy. Here the truth of the matter alleged in the answer was not only not in controversy, but was established beyond controversy by plaintiff's witness. His Honor instructed the jury that if they found that the mistake in the address occurred at the Beaufort office they should answer the issue for defendant. The plaintiff showed by his own witness that it did occur at that office. As frequently occurs, counsel inadvertently failed to answer an allegation and, as matter of course, is permitted to put in a denial. This is very far from being a "solemn admission," as if defendant had admitted the allegation. The purpose of a judicial trial is to ascertain the truth and administer the law as applicable to the facts. Rules of pleading and practice are made to promote this end. The plaintiff may show the fact to be different from the testimony of

his witness, but he cannot impeach his witness and ask the jury to discredit her. In this case he did neither, but he fixed liability upon one company and recovers damages from another. It is not suggested that there was any connection between the two lines fixing liability upon defendant company for the mistake of the Beaufort and Newport line. Plaintiff shows that the telegram was delivered to the Beaufort and Newport operator, addressed to "923 East Marshall Street"; that it was received by defendant's operator, addressed to "23 East Marshall Street," transmitted and delivered to the plaintiff in Richmond, addressed to "23 East Marshall Street"; and yet, for injury conceded to result from the mistake made at Beaufort, the defendant is made to pay damages, and this because counsel inadvertently failed to answer an allegation of the complaint which, by permission, it did answer and deny. I think that his Honor should have told the jury that, upon the uncontradicted evidence, the mistake occurred on the Beaufort and Newport line, for which defendant was not responsible. There is no denial that defendant delivered the message promptly when the correct address was given it. The only suggestion of negligence is that there was delay in sending the office message calling for a better address. This was, in the light of plaintiff's evidence, the only question for the jury.

BROWN, J., concurs in the dissenting opinion.