CEBUS WATSON v. JUANITA JACKSON WHITE AND LEROY WHITE

No. 53A83

(Filed 3 November 1983)

1. **Automobiles and Other Vehicles § 89.4— last clear chance—failure to instruct proper**

In a tort action in which plaintiff alleged defendant negligently hit him while he was crossing the street and defendant alleged that plaintiff was contributorily negligent, the trial court properly failed to instruct on the doctrine of last clear chance, and the Court of Appeals erred in focusing on whether the defendant should have seen plaintiff's perilous condition in time to avoid striking him without taking into account whether defendant had, within her then

---

plied to this case and that the due process question was not considered by the court.

existing ability, the time and means to avoid harming the plaintiff. The evidence tended to show that as defendant approached a grocery store which plaintiff was crossing the street to reach, she was traveling at a speed of approximately 40 miles per hour; defendant could not have discovered plaintiff's perilous position until she drove out of a curve, a distance of 75 feet from the store; that assuming defendant discovered plaintiff's perilous position immediately upon exiting the curve, the maximum amount of time that defendant had to avoid the injury was approximately 1.28 seconds; and on these facts, while defendant might have had the last *possible* chance to avoid the injury, she did not have the last *clear* chance.

**2. Trial § 11— jury argument—references to ability of defendants to pay—failure to show prejudice**

In a tort action, defense counsel's remark: "Can you imagine what a low jury verdict would do to that family?" was clearly improper, calculated to appeal to the sympathy of the jury, and the trial court erred as a matter of law in failing to sustain plaintiff's objection to the remark. Plaintiff, however, failed to show prejudice inasmuch as the jury did not reach the issue of damages.

**3. Pleadings § 37; Rules of Civil Procedure.§§ 8.2, 15; Trial § 38.1— request for instructions concerning evidential admissions—no error**

The trial judge did not err in refusing to submit plaintiff's proposed instructions to the jury concerning the effect of defendant's admissions in the pleadings where (1) defendant failed to deny certain allegations found in plaintiff's complaint in her answer, pursuant to G.S. 1A-1, Rule 8(d), (2) defendant moved to amend her answer to deny the allegations following closing arguments, (3) the trial court allowed the amendment pursuant to G.S. 1A-1, Rule 15(c), (4) after the amendments, the admissions were evidentiary admissions, (5) plaintiff failed to introduce the specific evidentiary admissions into evidence, and (6) it is apparent from the record that the defendants were given no opportunity to explain to the jury their failure to deny, by way of inadvertence, mistake of counsel, or otherwise, the allegations of the complaint.

Justice EXUM dissenting.

Justice FRYE dissenting.

DEFENDANTS appeal from a decision of the Court of Appeals reported at 60 N.C. App. 106, 298 S.E. 2d 174 (1982), one judge dissenting, granting plaintiff a new trial. The case was heard before *Hobgood (Robert B.), J.,* at the 13 April 1981 Session of Superior Court, WAKE County, as a civil action to recover damages for personal injuries allegedly caused by defendant Juanita Jackson White's negligence in striking the plaintiff, a pedestrian, with defendant Leroy White's automobile. Plaintiff appealed from a jury verdict finding defendant negligent and plaintiff contributorily negligent. The trial judge denied plaintiff's

request to submit the issue of last clear chance. Heard in the Supreme Court 8 September 1983.

At trial plaintiff, Cebus Watson, testified that on 12 October 1979 he left for work at approximately 5:30 a.m. His car ran out of gas on Rock Quarry Road. A man driving a truck gave him a ride to the Community Grocery store on Rock Quarry Road. The truck stopped across from the store, and plaintiff alighted from the passenger side of the truck, walked to the rear and emerged from behind the truck to cross the road to the store. Plaintiff was struck by defendants' vehicle after he had crossed the road and reached the shoulder of the pavement on the opposite side. Although plaintiff looked both ways before crossing, he did not see defendants' vehicle prior to being struck.

James Earl Hill, the driver of the truck, testified that he picked up the plaintiff on Rock Quarry Road and that as he approached the Community Grocery store, the plaintiff requested that Hill stop. Plaintiff indicated that he would ride to work with a co-worker whose car he had seen parked in front of the store. Hill was driving a 1972 pickup truck with a camper shell on the back. He testified that all four tires of the truck were on the hard surface of the paved road when he stopped as there was no shoulder. He stated: "When I stopped there was no vehicle coming behind me or in front of me. Before I could stop, and he got out, the lady came up over the hill and when the light shined on Cebus Watson coming behind my truck I saw just a vanish and at that time he vanished just like that." Both Mr. Hill and another witness, William Goodwin, testified that Mr. Watson was near the side of the road when he was hit.

Defendant Juanita White testified that she approached the Community Grocery store on Rock Quarry Road on 12 October between 6:10 and 6:15 a.m. It was still dark and she had her headlights on. She was traveling approximately 40 m.p.h. She saw Hill's truck stopped in the oncoming lane opposite the store and thought the driver had stopped "to make a left hand turn going to the store." Although at an earlier deposition defendant testified that she did not see the plaintiff prior to impact and did not know she had hit the plaintiff until she "heard it," at trial she testified that she saw a blur, "maybe a ghost like figure" crossing the road. Defendant stated that she remained in her lane of travel.

She did not blow her horn or apply her brakes prior to impact, nor did she turn or swerve or take any kind of evasive action. The right front fender of defendants' vehicle was damaged as a result of the accident.

Defendant Juanita White's testimony established further that upon traveling east just prior to reaching the Community Grocery store on Rock Quarry Road, there is a curve. The store is on the right "just as you are getting out of the curve." There was nothing to obscure her visibility from the time she left the curve until she reached the store.

Hilda Stancil, the co-worker whose car plaintiff had seen parked in front of the store, testified that the distance between the end of the curve and the store is approximately 75 feet. She testified that after 6:00 a.m. when the lights from the gas pump in front of the store are turned on, the area in front of the store is well-lit.

The three issues which are brought forward to this Court for determination and which are pertinent to the final disposition of this case were resolved by the Court of Appeals as follows:

1. The Court of Appeals, with one judge dissenting, held that the trial court erred in failing to instruct on and to submit the issue of last clear chance to the jury. On this issue we reverse the Court of Appeals.

2. The Court of Appeals held that arguments made by defendants' counsel to the jury concerning the effect that even a low jury verdict would have on defendants' "little family" constituted prejudicial error. We agree that the trial judge erred in overruling plaintiff's objections to the remarks and in failing to instruct the jury to disregard them. We do not agree however that the remarks, and thus the trial court's failure to strike them and give the cautionary instruction, constituted prejudicial error. We therefore reverse the Court of Appeals on this issue.

3. The Court of Appeals held that the trial court erred in failing to instruct the jury on the effect of defendants' admissions in their pleadings. The admissions were subsequently denied by amendment pursuant to Rule 15(c) of the Rules of Civil Procedure. Although competent as evidential admissions, plaintiff failed to

place this evidence before the jury at trial. Therefore we reverse the Court of Appeals on this issue.

*Moore, Ragsdale, Liggett, Ray & Foley, P.A., by Jane Flowers Finch, attorney for defendant-appellants.*

*Blanchard, Tucker, Twiggs, Denson & Earls, P.A., by Douglas B. Abrams, attorney for plaintiff-appellee.*

MEYER, Justice.

[1] Defendants contend that, on the facts in the record before us, the Court of Appeals erred in holding that plaintiff was entitled to an instruction on the issue of last clear chance.[1] Defendants argue that the source of the error lies in a misstatement of the law of last clear chance. The Court of Appeals enunciated the law as follows:

> The elements of the doctrine of last clear chance are the following: (1) plaintiff, by his own negligence, placed himself in a position of peril (or a position of peril to which he was inadvertent); (2) defendant saw, or by the exercise of reasonable care should have seen, and understood the perilous position of plaintiff; (3) defendant should have seen or discovered plaintiff's perilous condition in time to have avoided injuring him; (4) notwithstanding such notice, defendant failed or refused to use every reasonable means at his command to avoid the impending injury; and (5) plaintiff was injured as a result of defendant's failure or refusal to avoid the impending injury. *Wray v. Hughes,* 44 N.C. App. 678, 262 S.E. 2d 307, *review denied,* 300 N.C. 203, 269 S.E. 2d 628 (1980).

60 N.C. App. at 109, 298 S.E. 2d at 176 (emphasis added). It is to the underlined portion of this statement of the law that defendants particularly object.

The opinion below also cited as authority the Restatement of Torts, Second, as follows:

---

1. In making our determination, we are bound by the record. We caution that evidence of the specific facts so necessary to a determination of the applicability of the doctrine of last clear chance did not appear to be fully developed at trial.

§ 479. Last Clear Chance: Helpless Plaintiff. A plaintiff who has negligently subjected himself to a risk of harm from the defendant's subsequent negligence may recover for harm caused thereby if, immediately preceding the harm,

(a) the plaintiff is unable to avoid it by the exercise of reasonable vigilance and care, and

(b) the defendant is negligent in failing to utilize with reasonable care and competence his then existing opportunity to avoid the harm, when he

(i) knows of the plaintiff's situation and realizes or has reason to realize the peril involved in it or

(ii) *would discover the situation and thus have reason to realize the peril, if he were to exercise the vigilance which it is then his duty to the plaintiff to exercise.* (Emphasis added.)

60 N.C. App. at 111, 298 S.E. 2d at 177.

The Court of Appeals, applying the above-quoted law to the facts, then held that the trial court erred in failing to submit the issue of last clear chance to the jury, stating that:

The evidence in this case tended to show that the road in front of the grocery store was well lit, defendant could have had an unobstructed view of plaintiff as he crossed the road in defendant's lane, plaintiff was hit when he was either at the edge of the road or on the shoulder, and defendant's right front fender was damaged in the collision. This evidence would permit the jury to find that if defendant had kept a proper lookout she could have avoided the accident by swerving slightly to her left. Indeed, this is most likely the basis upon which the jury found defendant negligent. Having found both plaintiff and defendant negligent, the jury should have then been allowed to consider whether defendant should have seen plaintiff's perilous condition in time to avoid striking him, and whether defendant used every reasonable means at her command to avoid the impending injury.

*Id.* at 111-12, 298 S.E. 2d at 177-78.

We agree with defendants that the Court of Appeals erred, at least to the extent that it relied solely on the language from *Wray v. Hughes,* 44 N.C. App. 678, 682, 262 S.E. 2d 307, 310, *disc.*

*rev. denied,* 300 N.C. 203, 269 S.E. 2d 628 (1980), that defendant "should have so seen or discovered plaintiff's perilous condition in time to have avoided injuring him." The test as applied by the Court of Appeals, in focusing on whether the defendant *should have seen plaintiff's perilous condition in time to avoid striking him,* failed to take into account whether defendant had, within her then existing ability, *the time and means* to avoid harming the plaintiff.

In *Exum v. Boyles,* 272 N.C. 567, 576, 158 S.E. 2d 845, 853 (1968), we stated with respect to the doctrine of last clear chance that

> there must be proof that after the plaintiff had, by his own negligence, gotten into a position of helpless peril (or into a position of peril to which he was inadvertent), the defendant discovered the plaintiff's helpless peril (or inadvertence), or, being under a duty to do so, should have, and, thereafter, the defendant, *having the means and the time to avoid the injury,* negligently failed to do so.

(Emphasis added.)

In *Clodfelter v. Carroll,* 261 N.C. 630, 634-35, 135 S.E. 2d 636, 639 (1964), we stated that an injured pedestrian found to be contributorily negligent must establish four elements in order to invoke the doctrine of last clear chance against the driver of the motor vehicle which struck and injured him. These are:

> (1) That the pedestrian negligently placed himself in a position of peril from which he could not escape by the exercise of reasonable care; (2) that the motorist knew, or by the exercise of reasonable care could have discovered, the pedestrian's perilous position and his incapacity to escape from it before the endangered pedestrian suffered injury at his hands; (3) *that the motorist had the time and means to avoid injury* to the endangered pedestrian by the exercise of reasonable care after he discovered, or should have discovered, the pedestrian's perilous position and his incapacity to escape from it; and (4) *that the motorist negligently failed to use the available time and means to avoid injury* to the endangered pedestrian, and for that reason struck and injured him.

(Emphasis added.)

We now determine whether the plaintiff in the present case has established the four elements enumerated in *Clodfelter* and applied in *Exum*, and therefore is entitled to an instruction on last clear chance. First, it is reasonable to conclude that the plaintiff could not have, by the exercise of reasonable care, extricated himself from the position of peril into which he had negligently placed himself. Plaintiff apparently did not see defendants' oncoming vehicle; he determined that he could cross the highway in safety; and as a result, he placed himself in a position of peril. Unlike the facts in *Clodfelter v. Carroll*, 261 N.C. 630, 135 S.E. 2d 636, plaintiff never saw defendants' vehicle and therefore could not reasonably have been expected to act to avoid injury. Thus the first element of the *Clodfelter* test is satisfied.

Secondly, as we noted in *Exum v. Boyles*, 272 N.C. at 576, 158 S.E. 2d at 852, the doctrine of last clear chance imposes liability upon a defendant who did not actually know of the plaintiff's peril, as the facts here tend to disclose, "if, but only if, the defendant owed a duty to the plaintiff to maintain a lookout and would have discovered his situation had such a lookout been maintained." In *Exum* we added that "a motorist upon the highway does owe a duty to all other persons using the highway, including its shoulders, to maintain a lookout in the direction in which the motorist is traveling." 272 N.C. at 576, 158 S.E. 2d at 852-53. Finally, in *Exum*, we termed as "inaccurate" those decisions which appeared to hold that the " 'original negligence' of a defendant cannot be relied upon to bring into play the last clear chance doctrine since this 'original negligence' is cancelled or nullified by the plaintiff's contributory negligence." 272 N.C. at 576, 158 S.E. 2d at 853.

With these principles in mind, it is reasonable to conclude that defendant owed a duty to the plaintiff to maintain a proper lookout; that defendant was originally negligent in failing to keep a proper lookout; and that although not knowing of plaintiff's peril, defendant, by the exercise of reasonable care, could have discovered plaintiff's perilous position. The second element of the *Clodfelter* test is thus satisfied.

We hold, however, as a matter of law, that plaintiff has failed to establish the third element necessary to invoke the doctrine of last clear chance; that is, that defendant had the time and the

means to avoid the injury to the plaintiff by the exercise of reasonable care after she discovered or should have discovered plaintiff's perilous position.

In the case *sub judice* the defendant had neither the time nor the means to avoid the injury: As defendant approached the Community Grocery store, she was traveling at a speed of approximately 40 m.p.h., well within the authorized speed limit. She could not have discovered plaintiff's perilous position until she drove out of the curve, a distance of some 75 feet from the store. There is some factual dispute as to whether plaintiff began crossing the highway before or after defendants' vehicle emerged from the curve. In any event, assuming defendant discovered plaintiff's perilous position immediately upon exiting the curve, the *maximum* amount of time that defendant had to avoid the injury was approximately 1.28 seconds—the time it took defendant to travel the full 75 feet at a speed of 40 m.p.h. In *Mathis v. Marlow*, 261 N.C. 636, 639, 135 S.E. 2d 633, 635 (1964), we stated that the doctrine of last clear chance is invoked "only in the event it is made to appear that there was an appreciable interval of time between the plaintiff's negligence and his injury during which the defendant, by the exercise of ordinary care, could or should have avoided the effect of plaintiff's prior negligence." Where there is no evidence that a person exercising a proper lookout would have been able, in the exercise of reasonable care, to avoid the collision, the doctrine of last clear chance does not apply. On the facts before us, while defendant might have had the last *possible* chance to avoid the injury, she did not have the last *clear* chance. *Battle v. Chavis*, 266 N.C. 778, 147 S.E. 2d 387 (1966); *Mathis v. Marlow*, 261 N.C. 636, 135 S.E. 2d 633. The trial court properly failed to instruct on and to submit the issue of last clear chance to the jury.

[2] Defendants next contend that the Court of Appeals erred in holding that counsel's references to the ability of defendants to pay even a small verdict, made during closing argument to the jury, constituted prejudicial error. The objected to portion of the argument is as follows:

Can you imagine what a low jury verdict would do to that family.

MR. ABRAMS: Objection to what a verdict would do.

COURT: Overruled. Argument of contention.

MR. RAGSDALE: Can you imagine what a jury verdict, a low jury verdict, a little one, five thousand dollars, would do to that little family.

The remarks are clearly improper, calculated to appeal to the sympathy of the jury. "In a court of justice neither the wealth of one party nor the poverty of the other should be permitted to affect the administration of the law. *Lutz Industries, Inc. v. Dixie Home Stores,* 242 N.C. 332, 88 S.E. 2d 333 (1955); *Yost v. Hall,* 233 N.C. 463, 64 S.E. 2d 554 (1951)." *Scallon v. Hooper,* 58 N.C. App. 551, 556, 293 S.E. 2d 843, 845-46, *cert. denied,* 306 N.C. 744, 295 S.E. 2d 480 (1982). While it is true that in jury trials "the whole case as well as of law as of fact may be argued to the jury," and counsel's freedom of argument should not be impaired without good reason, argument is not without limitation. G.S. § 84-14. *Wilcox v. Motors Co. and Wilson v. Motors Co.,* 269 N.C. 473, 153 S.E. 2d 76 (1967); *Jenkins v. Hines Co.,* 264 N.C. 83, 141 S.E. 2d 1 (1965). Thus, "[w]hen the remarks of counsel are not warranted by either the evidence or the law, or are calculated to mislead or prejudice the jury, it is the duty of the judge to interfere." *In re Will of Farr,* 277 N.C. 86, 93, 175 S.E. 2d 578 (1970). Under these circumstances the trial court has a duty, upon objection, to censure the remarks and, if the impropriety is gross, it is proper for the trial judge, even in the absence of objection, to correct the abuse *ex mero motu. See State v. Monk,* 286 N.C. 509, 212 S.E. 2d 125 (1975). We hold that the trial court erred as a matter of law in failing to sustain plaintiff's objection to the remarks of defendants' counsel, which remarks had no basis in law or fact, but rather injected extraneous considerations concerning defendants' financial situation so far as their capacity to respond to damages was concerned.

Plaintiff, however, has failed to show prejudice inasmuch as the jury did not reach the issue of damages. In this respect the Court of Appeals erred. We reject plaintiff's argument that counsel's remarks influenced the jury on their finding of liability; that is, the jury chose to find plaintiff contributorily negligent in order to insure that defendants would not be liable for damages.

Under this assignment of error, plaintiff further argues that the defendants improperly appealed to religious prejudice in their

closing argument. This question was not addressed by the Court of Appeals and we find no reference to the contention in defendants' brief to this Court. Before us, then, we have plaintiff's statement in his brief that "[c]ounsel for defendant argued that the defendant, Juanita White, should not be held negligent because after the collision the 'first thing she did was say a prayer.'" The record, however, does not indicate the context in which defense counsel's argument was made, but merely provides:

COURT: Overruled. Argument of contention.

MR. RAGSDALE: First thing she did was say a prayer.

MR. ABRAMS: Objection.

COURT: Overruled.

MR. RAGSDALE: Now they object to prayer.

The record does not disclose whether the defendant, Juanita White, testified that after the collision she said a prayer; that is, whether defense counsel's statement was based on evidence at trial. Plaintiff, however, does not object to the argument on this basis. Furthermore, there is nothing in the record to indicate that inquiry was made into the religious beliefs of any party or witness at trial, or that the statement reflected any religious preference. Under these circumstances, we can only determine that defense counsel's remark was irrelevant. The conduct of a trial, including proper supervision over the argument of counsel, is a matter largely within the discretion of the trial judge. *Hamilton v. Henry*, 239 N.C. 664, 80 S.E. 2d 485 (1954); *Rupert v. Rupert*, 15 N.C. App. 730, 190 S.E. 2d 693, *disc. rev. denied*, 282 N.C. 153, 191 S.E. 2d 759 (1972). We hold that it was within the trial court's discretion to overrule plaintiff's objection.

[3] Finally defendants contend that the Court of Appeals erroneously concluded that the trial judge erred in failing to instruct the jury on the effect of the defendants' admissions in the pleadings.

In their answer, the defendants, through what they now argue to us as inadvertence, failed to deny paragraph 12(c)-(e) of plaintiff's complaint which alleged that:

12. The defendant, Juanita J. White, operated the said vehicle carelessly and negligently in that she:

c. Failed to reduce speed when such was necessary to avoid colliding with the plaintiff, Cebus Watson, and when such was necessary to avoid injury to the plaintiff Cebus Watson, in violation of North Carolina General Statute Section 140(m);

d. Drove at a speed and in a manner so that she was unable to stop within the radius of her headlights in violation of the duty to use due care and keep a proper lookout;

e. Drove the car off the highway, striking the plaintiff, Cebus Watson, and causing the plaintiff severe and permanent bodily injuries.

Following closing arguments, defendants moved to amend their answer to deny these allegations. The trial court allowed the amendment pursuant to G.S. § 1A-1, Rule 15(c), stating that the amendment related back to the original date of the filing of the answer, "[a]nd the denial of the allegations in Paragraphs 12(a) through (e) of the plaintiff's Complaint has full force and effect as of the date of the Answer." Plaintiff then submitted the following proposed jury instruction which the trial court declined to give:

The admissions of a party in an amended complaint are evidence of something that the Defendants once said, even if the complaint is amended, and although it is not conclusive evidence, it is some evidence of what the parties once said through their attorney.

In finding error in the trial court's refusal to give the proposed jury instruction, the Court of Appeals relied on 2 Brandis on North Carolina Evidence § 177 (1982), quoting as follows:

[There are] two classes of pleadings: (1) the final pleadings defining the issues and on which the case goes to trial, and (2) other pleadings in the same or another case which do not serve to define the issues in the case being litigated. An admission in a pleading of the first class is a *judicial* admission, conclusively establishing the fact for the purposes of that case and eliminating it entirely from the issues to be tried. . . .

Pleadings of the second class, while not defining issues in the case being litigated, nevertheless reflect something

which a party has once said . . . and qualify as *evidential* admissions. This class includes: pleadings . . . in the same case which, though once serving to define issues, have been withdrawn, amended to strike out admissions, or otherwise superseded. . . . (Emphasis in original.)

60 N.C. App. at 113, 298 S.E. 2d at 178-179.

The Court of Appeals then stated:

Before defendant amended her answer the admitted allegations were judicial admissions which conclusively established those facts. These admissions did not need to be introduced into evidence. After the amendment, the admissions were evidentiary admissions. Since defendant's admissions were relevant, the trial judge erred in refusing to submit plaintiff's proposed instructions to the jury.

60 N.C. App. at 114, 298 S.E. 2d at 179.

In granting defendants' motion to amend their answer, the trial judge acted within his discretion. *Service Co. v. Sales Co.*, 264 N.C. 79, 140 S.E. 2d 763 (1965). Thus, as the Court of Appeals properly noted, the amendment to defendants' answer denying the allegations in paragraph 12(c)-(e) had the effect of removing the admitted allegations from the class of judicial admissions into the class of evidential admissions.

Without considering the confusing nature of plaintiff's proposed jury instruction in that the alleged admissions were not made in an *amended complaint*, but rather in an *amended answer*, the proposed instruction appears to have been submitted on the assumption that the admissions were, in fact, evidential admissions. Plaintiff therefore relies upon the authority of *Willis v. Telegraph Co.*, 150 N.C. 318, 64 S.E. 11 (1909), to argue that the trial court erred in failing to give the proposed instruction. In *Willis* we stated: "The fact that the defendant afterwards filed an amended answer and denied that it was the owner of the Beaufort and Newport line does not affect the competency of the evidence, but merely detracts from its weight or its sufficiency to prove the fact now in issue." *Id.* at 324, 64 S.E. at 14.

While *Willis* stands for the proposition that allegations in a complaint not initially denied by answer may constitute evidential

admissions,[2] that case further points out that to take advantage of evidential admissions, the opponent must introduce them into evidence. The evidence, however, is not conclusive on the issue of the specific act of defendants' negligence. *Willis v. Telegraph*, 150 N.C. 318, 64 S.E. 11; *Cummings v. Hoffman*, 113 N.C. 267, 18 S.E. 170 (1893). "It might be shown that [the admission] was made under a misapprehension, or by mistake or inadvertence." 113 N.C. at 269, 18 S.E. at 171. The plaintiff in *Willis* offered into evidence both the complaint and the original answer. In fact, in quoting Section 177 of Brandis, the Court of Appeals failed to include the following relevant language: "[t]o take advantage of [evidential] admissions . . ., the opponent must introduce them in evidence; and, when introduced, they are not conclusive, but may be controverted or explained on the ground of inadvertence or mistake of counsel or otherwise." In holding that plaintiff was entitled to his proposed jury instruction, the Court of Appeals did not consider whether plaintiff had introduced the complaint and original answer into evidence. The record, however, indicates that prior to resting his case, plaintiff offered into evidence "all the admissions of record, the pleadings or any other admissions and the stipulations and the pre-trial order that had not already been admitted." It is also apparent from the record that the defendants were given no opportunity to explain to the jury their failure to deny, by way of inadvertence, mistake of counsel, or otherwise, the allegations of paragraph 12(c)-(e) of the complaint. Furthermore, Professor Brandis suggests that:

> Even if the judge finds that there is a presumption or evidence sufficient to justify a finding that an attorney had authority to make an evidential admission, and thus receives it, the client may still testify that he did not authorize or ap-

---

2. Plaintiff's reliance on *Willis* will not support the giving of the proposed instruction absent a showing that the question was before the jury at trial. However, the case does negate defendants' position that under G.S. § 1A-1, Rule 15(c), plaintiff would never be entitled to a jury instruction on evidential admissions under these circumstances. It appears that in refusing to submit the proposed instruction, the trial judge adopted defendants' position that because the amendment related back to the date of the filing of the original answer and had "the full force and effect as of the date of the Answer," there were no prior admissions. We point out that our holding today, contrary to defendants' belief, is not inconsistent with G.S. § 1A-1, Rule 15(c). The effect of that rule in the circumstances presented by the case *sub judice* is, as we have stated, to transform what was in the first instance a judicial admission under G.S. § 1A-1, Rule 8(d) into an evidential admission.

prove it and that he denies its truth. The jury should then be instructed that if the admission is found to be unauthorized it should be disregarded, even if made.

2 Brandis on North Carolina Evidence § 177, n. 77.

On the facts in the record before us, we hold that the trial judge did not err in refusing the requested instruction. The introduction of "all the admissions of record" did not place this evidence before the jury at trial in the sense of drawing the jury's attention to the specific allegations of the complaint and the specific answers thereto.

The decision of the Court of Appeals is reversed and the case is remanded to that court for reinstatement of the judgment of the trial court.

Reversed and remanded.

Justice EXUM dissents on the jury argument question and votes for a new trial for the reasons stated in the Court of Appeals opinion on this question.

Justice FRYE dissents because of the failure of the trial court to submit the issue of last clear chance to the jury.