MURPHY, Judge.
A jury trial was held to determine the validity of a premarital agreement between a husband and wife. The jury found the agreement to be unenforceable, as the wife did not execute the document voluntarily. The husband now appeals the denial of his motions for summary judgment, directed verdict, and new trial. Where a party appeals from interlocutory orders that do not fall within a statutory exception, we dismiss. A trial court does not err in denying a motion for new trial where a jury instruction is supported by evidence. Additionally, a trial court does not err in denying a motion for new trial where opposing counsel's statements made before the jury without objection are not grossly improper. Accordingly, we affirm.
BACKGROUND
Lauren Helbein ("Lauren") worked in the accounts receivable department at a scrap metal brokerage firm in 1986 when she met Isaac Robert Helbein ("Bobby"), an employee of his family's scrap metal business, Southern Metals Company, Inc. After speaking on the phone professionally, Lauren and Bobby eventually met in person and began a romantic relationship. A few years later, the couple became engaged and were wed on 6 October 1995. While both parties agreed that a Premarital Agreement was executed prior to the wedding, the events of the days leading up to the wedding remain disputed.
According to Lauren, she and Bobby first discussed the idea of a premarital agreement two to three days before the wedding. She testified that Bobby told her that "he wanted to make sure that the business would be left to his son." Lauren agreed, but wanted to be sure that "anything that [she and Bobby] built together would be [theirs] and would be shared." Lauren testified that Bobby agreed to her request, and the two did not discuss the details of the premarital agreement until the day of the wedding. On that day, approximately one hour before the wedding, Lauren stated that Bobby took her to his lawyer's office to sign a "Prenuptial Agreement." According to Lauren, this was the first time she received the document, as she was not provided any drafts to review ahead of time. No financial documents or records were shared between Lauren and Bobby. Lauren was unable to understand the contents of the document and asked Bobby and Bobby's attorney whether she needed a lawyer to represent her:
Lauren: I started to read the document and then I looked up and I said, "This is just Greek to me. I don't understand any of this." And, at that time, I said, "Do I need to get a lawyer? Do I need some form of representation?" ... Bobby said did I have a lawyer? I said, "Yes, I have a lawyer in South Carolina .... She was my lawyer for my first divorce." And [Bobby's attorney] said, "Well, she could not represent you because she probably doesn't practice law in both states[.]"
Lauren then recalled Bobby asking his attorney whether the attorney could represent Lauren:
Lauren: ... Bobby said to [his attorney], "Can you represent her?" And [Bobby's attorney] said, "Yes, I can." And I said, "Is that all right?" And Bobby said, "Don't you trust me?"
After seeking clarification and receiving assurances from Bobby and his attorney, Lauren signed the agreement, and she and Bobby left for their wedding.
Bobby offered a conflicting recollection of these events before the jury. He testified the meeting at his attorney's office on 6 October 1995 never took place. Bobby stated that he first provided Lauren with a draft of their premarital agreement on 26 September 1995, which Lauren reviewed and he returned to his attorney with changes. On the wedding day, over a week later, Bobby recalled driving to North Carolina National Bank to execute the final agreement drafted by his attorney. Bobby stated that his attorney was not present at the bank and that there was never any meeting or discussion between Lauren and Bobby's attorney. According to Bobby, only he, Lauren, and the bank notary were present when the two signed and executed the document entitled "Premarital Agreement." Bobby does not dispute that neither party provided the other with formal financial statements.
In 2015, Lauren and Bobby separated. Lauren contends that this was when she saw the premarital agreement for this first time since signing it over eighteen years earlier. The premarital agreement the parties signed contained a provision allowing Bobby to keep active and passive increases in the value of separate property, receive all income derived from separate property, and use all earnings and accumulations during the marriage to acquire company stock as his separate property. The agreement stated there was a "complete and open exchange of information about [the couple's] financial conditions." Finally, the agreement waived Lauren's right to file a claim for equitable distribution.
Lauren filed a complaint asserting claims for alimony, equitable distribution, interim distribution, and attorneys' fees. Bobby then filed a complaint for declaratory judgment seeking to enforce the premarital agreement. The actions were consolidated, and both parties requested an initial jury trial on the issue of validity of the premarital agreement under N.C.G.S. § 52B-7(a)(1). On 15 June 2017, the jury returned the verdict that Lauren did not execute the premarital agreement voluntarily, rendering the agreement unenforceable. Bobby now appeals.
ANALYSIS
A. Motions for Summary Judgment and Directed Verdict
Bobby argues the trial court erred in denying his motion for summary judgment and subsequent motion for directed verdict. He states the trial court's orders denying these motions "are ripe for appellate review as (1) the Jury Verdict Judgment is a final judgment that should fall within the provision of [N.C.G.S.] § 50-19.1 and (2) a dismissal of the appeal could result in two different jury trials on the same issue and a subsequent equitable distribution trial[,] ... [thus] support[ing] a 'substantial right' determination."
1. Interlocutory Appeals
An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy. As a general rule, there is no right of appeal from an interlocutory order. The reason for this rule is to prevent fragmentary, premature and unnecessary appeals by permitting the trial court to bring the case to final judgment before it is presented to the appellate courts.
Larsen v. Black Diamond French Truffles, Inc. , 241 N.C. App. 74, 76, 772 S.E.2d 93, 95 (2015) (citations and internal quotation marks omitted). There are, however, limited statutorily designated circumstances under which an appeal from an interlocutory order may be taken. When an order is interlocutory, it is the burden of appellant "to present appropriate grounds for this Court's acceptance of an interlocutory appeal ...." Jeffreys v. Raleigh Oaks Joint Venture , 115 N.C. App. 377, 379, 444 S.E.2d 252, 253 (1994).
N.C.G.S. § 7A-27(b)(3) is one such statute enumerating appropriate grounds for appeal from an interlocutory order in a civil action:
(b) Except as provided in subsection (a) of this section, appeal lies of right directly to the Court of Appeals in any of the following cases:
(3) From any interlocutory order or judgment of a superior court or district court in a civil action or proceeding that does any of the following:
(a) Affects a substantial right.
(b) In effect determines the action and prevents a judgment from which an appeal might be taken.
(c) Discontinues the action.
(d) Grants or refuses a new trial.
(e) Determines a claim prosecuted under G.S. 50-19.1.
(f) Grants temporary injunctive relief restraining the State or a political subdivision of the State from enforcing the operation or execution of an act of the General Assembly ....
N.C.G.S. § 7A-27(b)(3) (2017).
We must first determine whether the judgment following the jury's verdict on the validity of the premarital agreement is interlocutory. In Johnson v. Johnson , 208 N.C. App. 118, 701 S.E.2d 722 (2010), we addressed the question of whether the trial court's determination on the validity of a separation agreement was immediately appealable. We held that such a determination was not "a final judgment as to a claim for relief." Id. at 122, 701 S.E.2d at 725 (internal quotation marks omitted). We observed that the allegation that the separation agreement precluded equitable distribution was "properly characterized as a preemptive plea in bar - essentially, an anticipated response to Defendant's potential counterclaims for divorce, postseparation support, alimony, and equitable distribution." Id. As such, we held the order was not immediately appealable, as it only disposed of the plea in bar and did not "finally adjudicate any of plaintiff's claims." Id. at 122-23, 701 S.E.2d at 726.
Here, while a jury trial was held on the issue of the validity of a premarital agreement, in contrast to a pre-trial order, the procedural posture of the judgment remains analogous to that in Johnson . The jury, similar to the trial court in Johnson , was faced solely with the question of whether the premarital agreement was valid and enforceable. While the jury's verdict, and the ensuing judgment, resolved that specific question and set aside the premarital agreement, it did not "dispose of the case" or "determine the entire controversy." See Larsen , 241 N.C. App. at 76, 772 S.E.2d at 95. This is because the jury's determination that the premarital agreement was unenforceable is the equivalent to disposing of Bobby's plea in bar to Lauren's claims for equitable distribution and alimony. The disposition of such a plea in bar is not a final judgment on a claim for relief, as Lauren's claims remain to be adjudicated before the entire controversy is settled and determined.
Since the jury's verdict in the case before us did not fully and finally adjudicate the remaining claims, the trial court's preceding orders denying Bobby's motions for summary judgment and directed verdict on this issue are interlocutory. We must, therefore, determine whether Bobby's asserted statutory exceptions, N.C.G.S. § 7A-27(b)(3)(a) and (e), permit us to review these interlocutory orders on appeal.
2. N.C.G.S. § 50-19.1
An interlocutory order or judgment in a civil action that determines "a claim prosecuted under N.C.G.S. § 50-19.1" is appealable under N.C.G.S. § 7A-27(b)(3)(e). N.C.G.S. § 50-19.1 enumerates the types of claims from which an adjudicating order or judgment may be appealed, despite the pendency of other claims in the same action.
In 2013, the General Assembly enacted the first version of N.C.G.S. § 50-19.1 :
Notwithstanding any other pending claims filed in the same action, a party may appeal from an order or judgment adjudicating a claim for absolute divorce, divorce from bed and board, child custody, child support, alimony, or equitable distribution if the order or judgment would otherwise be a final order or judgment within the meaning of G.S. 1A-1, Rule 54(b), but for the other pending claims in the same action. A party does not forfeit the right to appeal under this section if the party fails to immediately appeal from an order or judgment described in this section. An appeal from an order or judgment under this section shall not deprive the trial court of jurisdiction over any other claims pending in the same action.
N.C.G.S. § 50-19.1 (2017). The only claims from which an adjudicating order or judgment could be appealed despite other pending claims in the same action are absolute divorce, divorce from bed and board, child custody, child support, alimony, or equitable distribution.
In 2018, the General Assembly amended N.C.G.S. § 50-19.1 to add the validity of a premarital agreement among the enumerated adjudicated claims that may be appealed. The amended statute now reads, in relevant part:
Notwithstanding any other pending claims filed in the same action, a party may appeal from an order or judgment adjudicating a claim for absolute divorce, divorce from bed and board, the validity of a premarital agreement as defined by G.S. 52B-2(1) , child custody, child support, alimony, or equitable distribution if the order or judgment would otherwise be a final order or judgment within the meaning of G.S. 1A-1, Rule 54(b), but for the other pending claims in the same action ....
N.C.G.S. § 50-19.1 (Supp. 2018) (emphasis added). The amended statute became effective on 25 June 2018 and applies to appeals filed on or after that date. 2018 S.L. 86, § 1. Therefore, under the amended statute, an order or judgment adjudicating a claim for the validity of a premarital agreement became appealable despite other pending claims in the same action.
Bobby filed notice of appeal on 20 November 2017, before 25 June 2018, requiring us to apply the pre-amended version of N.C.G.S. § 50-19.1 to the appeal. Under the pre-amended version, an order or judgment adjudicating a claim regarding the validity of a premarital agreement was not listed as grounds for appeal. Accordingly, as it was written and effective when this appeal was filed, the jury's verdict on the validity of the premarital agreement did not determine "a claim prosecuted under G.S. 50-19.1." Bobby has not shown that these interlocutory orders are appealable under N.C.G.S. § 7A-27(b)(3)(e).
3. Substantial Right
The jury's verdict only determined the validity of Bobby and Lauren's premarital agreement. It did not in any way dispose of Lauren's claims for equitable distribution and alimony - indeed, it allowed these claims to survive and continue. Accordingly, the verdict setting aside the premarital agreement is equivalent to allowing Lauren to proceed on her claims of equitable distribution and alimony, despite Bobby's assertion of an affirmative defense. See Johnson , 208 N.C. App. at 126, 701 S.E.2d at 727-28. We have held that the disposition of such pleas in bar does not affect a substantial right entitling an appellant to appeal the otherwise interlocutory orders. Id. (order setting aside separation agreement did not affect a substantial right); Garris v. Garris , 92 N.C. App. 467, 470, 374 S.E.2d 638, 640 (1988) (holding the trial court's ruling setting aside the separation and property settlement agreement did not affect a substantial right). As Bobby has failed to show that a substantial right "will be lost or prejudiced by delaying his appeal until the final judgment on plaintiff's equitable distribution and alimony claims[,]" these trial court orders are not immediately appealable. See Garris , 92 N.C. App. at 470, 374 S.E.2d at 640.
Even assuming arguendo that the trial court's orders were immediately appealable, Bobby would be unable to show that the trial court's denial of his motions for summary judgment and directed verdict are reviewable on appeal. Denial of a motion for summary judgment after a judgment on the merits is not reviewable on appeal. Harris v. Walden , 314 N.C. 284, 286, 333 S.E.2d 254, 256 (1985). Additionally, Bobby's failure to renew his motion for directed verdict after offering his own evidence waived his argument that the trial court erred in denying his initial motion for directed verdict made at the close of Lauren's evidence. See Stallings v. Food Lion, Inc. , 141 N.C. App. 135, 136-37, 539 S.E.2d 331, 332 (2000) ("When a motion is made for directed verdict at the close of the plaintiff's evidence, the trial court may either rule on the motion or reserve its ruling on the motion. By offering evidence, however, a defendant waives its motion for directed verdict made at the close of plaintiff's evidence.")
For these reasons, we dismiss Bobby's appeal of the denial of his motions for summary judgment and directed verdict.
B. Motion for New Trial
Bobby argues the trial court erred in denying his motion for a new trial.[1] Specifically, he contends that a new trial was required when the following errors were made: (1) the jury was instructed on an issue unsupported by the evidence and (2) plaintiff's counsel made grossly improper statements during trial. We consider each alleged error in turn and hold that the trial court did not err in denying Bobby's motion for a new trial.
1. Jury Charge
Bobby first contends the trial court erred in denying his motion for a new trial, arguing "it was prejudicial error for the trial court to submit to the jury the issue of fraud." We disagree.
The trial court is required to submit to the jury those issues raised by the pleadings and supported by the evidence. An issue is supported by the evidence when there is substantial evidence, considered in the light most favorable to the non-movant, in support of that issue. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.
In re Estate of Ferguson , 135 N.C. App. 102, 105, 518 S.E.2d 796, 798 (1999) (citations and internal quotation marks omitted). "While an order for new trial pursuant to Rule 59 ... may ordinarily be reversed on appeal only in the event of a manifest abuse of discretion, when the trial court grants or denies a new trial due to some error of law," such as instructing the jury on an issue unsupported by the evidence, we review the trial court's decision de novo. Chiltoski v. Drum , 121 N.C. App. 161, 164, 464 S.E.2d 701, 703 (1995) (citation and internal quotation marks omitted); Eason v. Barber , 89 N.C. App. 294, 297, 365 S.E.2d 672, 674 (1988).
"While actual fraud has no all-embracing definition, the following essential elements of actual fraud are well established: (1) False representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." Forbis v. Neal , 361 N.C. 519, 526-27, 649 S.E.2d 382, 387 (2007). Bobby contends there was insufficient evidence to support an instruction on fraud, as there was no evidence of a material misrepresentation, reasonable calculation to deceive, or actual deception.
Bobby admitted on cross-examination that he told Lauren "the purpose of that agreement [was] to simply protect [his] ownership in Southern Metals Company so that [he] could leave it to [his] children[.]" Moreover, Bobby stated he agreed with Lauren that "anything other than [the company] would be marital property." Taking the evidence in the light most favorable to Lauren, as the non-movant, a reasonable mind might accept such evidence as adequate to support the conclusion that Bobby made a false representation to Lauren about the contents of the premarital agreement prior to her signing.
Evidence was also presented from which a reasonable mind could conclude that these misrepresentations were calculated to deceive and that they did, in fact, deceive Lauren. Lauren testified that she was not given a draft of the agreement to review prior to the meeting at Bobby's attorney's office prior to the wedding ceremony. Furthermore, after expressing that she could not understand the contents of the agreement, Bobby's attorney stated he could represent Lauren. When Lauren questioned whether Bobby's attorney could represent her, Bobby stated, "Don't you trust me?" Furthermore, Lauren was asked at trial, "[D]id you enter into that agreement based upon what you understood was to be in the agreement as represented by [Bobby]?" Lauren responded, "Yes."
The trial court's instruction was supported by the evidence. Accordingly, the trial court did not err in subsequently denying Bobby's motion for a new trial.
2. Improper Comments by Counsel
"While it is true that in jury trials the whole case as well as of law as of fact may be argued to the jury, and counsel's freedom of argument should not be impaired without good reason, argument is not without limitation." Watson v. White , 309 N.C. 498, 507, 308 S.E.2d 268, 274 (1983). When counsel makes remarks unwarranted by evidence or law, "the trial court has a duty, upon objection, to censure the remarks and, if the impropriety is gross, it is proper for the trial judge, even in the absence of objection, to correct the abuse ex mero motu ." Id. Thus, when no objection is made to allegedly improper statements, "our review is limited to discerning whether the statements were so grossly improper that the trial court abused its discretion in failing to intervene ex mero motu ." O'Carroll v. Texasgulf, Inc. , 132 N.C. App. 307, 315, 511 S.E.2d 313, 319 (1999). Similarly, the trial court's decision to grant or deny a motion for a new trial on the grounds of improper comments made to the jury is left to the sound discretion of the trial court and will be reversed only upon a showing of manifest abuse of discretion. Cameron v. Canady , 157 N.C. App. 132, 133, 577 S.E.2d 700, 701 (2003) ; Chiltoski , 121 N.C. App. at 164, 464 S.E.2d at 703.
Here, Bobby argues that opposing counsel made numerous grossly improper statements before the jury that required a new trial. Bobby made no objections at trial, however, on appeal, he challenges the following statements made by opposing counsel:
(A) "I'd point out that [Bobby's attorney who drafted the premarital agreement], still to this day, does legal work for Bobby Helbein and is the trustee of two significant trusts in which he's the beneficiary. So he's got some skin in this game too."
(B) "So that's just another misleading trickery on his part."
(C) Counsel's reading from a chart containing inconsistencies in Bobby's trial testimony and his deposition testimony.
(D) "The Player case is also much different than the case involved here, in fact, I was the attorney for Mr. Player in that case and I submitted the brief [to the] Court of Appeals this agreement the wife has had for weeks before she signed it. So that's not similar to our case we're talking about today ...."
Bobby first contends opposing counsel's statement, (A), about the attorney who drafted the agreement is improper in two ways: (1) the trial court repeatedly stated the only information to be shared regarding trusts was that Mr. Henderson is a trustee; and (2) the use of the word "significant" improperly alluded to Bobby's wealth. Given the fact that the trial court allowed evidence that Mr. Henderson was a trustee, we cannot say that Lauren's counsel's additional commentary amounted to gross impropriety such that the trial court abused its discretion by not intervening ex mero motu . Likewise, counsel's use of the word "significant" is not a grossly improper reference to Bobby's wealth. Bobby points us to Watson for the proposition that "the financial status of a party should not be discussed in a closing statement." While Watson indeed holds that remarks about wealth or poverty designed to appeal to the sympathies of the jury are improper, Watson was not applying a "grossly improper" standard to the improper statement. Watson , 309 N.C. at 507, 308 S.E.2d at 273-74. Moreover, the statement in this case was not a direct appeal to the sympathies of the jury based on financial status as was the statement in Watson of "Can you imagine what a jury verdict, a low jury verdict, a little one, five thousand dollars, would do to that little family[?]" Id. at 507, 308 S.E.2d at 273. Statement (A) was not grossly improper.
Next, Bobby challenges counsel's use of the term "misleading trickery" in (B). While the use of such a term referring to Bobby and implicating his counsel was improper, this is not the standard under which we review the statement, as Bobby's counsel did not object when it was made. See State v. Trull , 349 N.C. 428, 451, 509, S.E.2d 178, 193 (1998) ("The impropriety of the argument must be gross indeed in order for this Court to hold that a trial judge abused his discretion in not recognizing and correcting ex mero motu an argument which defense counsel apparently did not believe was prejudicial when he heard it.") (citation, alteration, and internal quotation marks omitted). Our thorough review of the record does not indicate that counsel's use of this term rises to the level of gross impropriety that likely influenced the jury's verdict.
Bobby's attempt to show that counsel's reading from a chart containing inconsistencies between his trial testimony and deposition testimony, (C), was grossly improper also fails. Bobby attempts to draw a parallel between counsel's actions here and those in Callicutt v. Smith , 267 N.C. 252, 148 S.E.2d 9 (1966). Callicutt is distinguishable from the case before us. There, counsel attempted "to present to the jury a large chart setting forth the defendant's life expectancy and a number of computations to support a verdict far in excess of the amount sued for." Id. at 252-53, 148 S.E.2d at 10. Additionally, there, opposing counsel objected. Id. at 253, 148 S.E.2d at 10. Bobby's counsel did not object to opposing counsel's actions, thus placing Callicut outside of our "grossly improper" review. Moreover, here, Lauren's counsel was not attempting to use a chart as an exhibit not introduced in evidence in the manner counsel did in Callicutt . The trial court also gave an instruction to the jury that they should be guided by their own recollection of the evidence. Accordingly, Bobby has failed to show that opposing counsel's statements were grossly improper.
Finally, Bobby challenges opposing counsel's reference to case law and "facts of his own knowledge" during counsel's discussion of the Player case in (D). The statements made by opposing counsel did not deviate from the facts found in the case itself such that those statements were grossly improper. Additionally, as the trial court noted in its Rule 59 order, it "instructed the jury that it was incumbent upon them to follow the law as directed by the Court and not by counsel."
In sum, while Lauren's counsel should have refrained from making a number of the statements now being challenged on appeal, and while some were improper, those statements do not rise to the level of gross impropriety such that it was an abuse of discretion for the trial judge to fail to intervene ex mero motu . Accordingly, the trial court did not err in denying Bobby's motion for a new trial on these grounds.
CONCLUSION
The denial of Bobby's motions for summary judgment and directed verdict are interlocutory and Bobby fails to show that they fall under an exception giving him an appeal of right. The trial court did not err in denying Bobby's motion for a new trial, as the fraud instruction was supported by evidence and opposing counsel's statements were not grossly improper such that the trial court abused its discretion by failing to intervene in the absence of an objection. We affirm.
DISMISSED IN PART; AFFIRMED IN PART.
Report per Rule 30(e).
Judges HUNTER, JR. and DAVIS concur in result only.

N.C.G.S. § 7A-27(b)(3)(d) specifically permits Bobby to appeal an order refusing a new trial.