BETSY VANCAMP v. WANDA CARTER BURGNER AND SAMUEL RICHARD BURGNER

No. 312A90

(Filed 3 April 1991)

**Automobiles and Other Vehicles § 570 (NCI4th)— pedestrian— struck by automobile—crossing road—last clear chance**

The Supreme Court could not conclude as a matter of law that plaintiff's evidence was insufficient to invoke the doctrine of last clear chance where the evidence, in the light most favorable to plaintiff, indicates that plaintiff pedestrian was within defendant driver's clear line of sight for five seconds before the collision, there was expert testimony that defendant had "ample" reaction time in which to see plaintiff and come to a complete stop, and a jury could thus reasonably infer both that defendant had the time and means to avoid the collision and that defendant negligently failed to use the available time or means to avoid injury to plaintiff.

**Am Jur 2d, Automobiles and Highway Traffic § 475.**

VANCAMP v. BURGNER

[328 N.C. 495 (1991)]

Justice MEYER dissenting.

Justices MITCHELL and MARTIN join in this dissenting opinion.

APPEAL by defendants pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 99 N.C. App. 102, 392 S.E.2d 453 (1990), reversing a judgment granting defendants' motion for directed verdict entered by *Ellis, J.,* on 22 February 1989 in Superior Court, ORANGE County. Heard in the Supreme Court 12 March 1991.

*Jeffrey H. Blackwell for plaintiff appellee.*

*David F. Tamer for defendant appellants.*

WHICHARD, Justice.

On 25 January 1988 plaintiff filed a lawsuit against defendants, alleging negligent operation of a motor vehicle resulting in a collision with plaintiff as she walked across West Hill Avenue in Hillsborough. Defendants answered, denying negligence on their part and alleging contributory negligence on the part of plaintiff. Plaintiff replied, denying contributory negligence and alleging that defendant-wife, the driver, had the last clear chance to avoid the collision.

The cause came on for trial at the 20 February 1989 Civil Session of Superior Court, Orange County. At the conclusion of plaintiff's evidence, the trial court granted defendants' motion for directed verdict. Upon plaintiff's appeal, a divided panel of the Court of Appeals reversed and ordered a new trial. Defendants exercised their right to appeal based on Judge Lewis's dissent. N.C.G.S. § 7A-30(2) (1989). The issue raised by the dissent is whether plaintiff's evidence was sufficient to invoke the doctrine of last clear chance. We hold that it was, and we thus affirm the Court of Appeals.

Plaintiff's evidence showed that at approximately 6:40 a.m. on 16 December 1986 plaintiff left her home and walked down her front walk towards West Hill Avenue. The morning was still fairly dark, but the sky was beginning to lighten and the weather was clear. Two street lights and a yard light provided additional illumination. Plaintiff was wearing blue jeans, a light-colored coat, and a red toboggan. Plaintiff had walked about three-quarters of

VanCAMP v. BURGNER

[328 N.C. 495 (1991)]

the way across the street when defendants' automobile collided with her, causing serious injury. West Hill Avenue is straight, with unobstructed daytime visibility of approximately 400 feet. Defendant-wife was traveling twenty to twenty-five miles per hour with her headlights providing illumination for approximately 300 feet.

Allen Weliford, an expert in accident reconstruction, traffic engineering, and highway safety, testified on behalf of plaintiff. Weliford's testimony indicated that the collision occurred when plaintiff had walked approximately fourteen feet into the roadway. Weliford also testified that the average walking speed for pedestrians, and plaintiff's actual walking speed, was four feet per second. Thus, according to the expert testimony, it would have taken plaintiff five seconds to walk from six feet off the street to the point of impact. In addition, plaintiff would have been walking in the street for approximately 3.5 seconds before the collision. The expert testimony also indicated that the average reaction time for a driver is from 1.5 to 2.0 seconds and the stopping time for the range of speeds at which defendant was traveling is 1.0 second. Thus, the expert concluded that it would

> take 5 seconds for the pedestrian to go from 6 feet off the pavement to the point of impact. If the car was in a skid for the last second, then it would, it leaves 4 seconds for reaction time. The average reaction time for drivers is around one and a half seconds. If you allow two seconds, in this case, because it's at night, . . . that still leaves an additional two seconds or ample reaction time for the driver to have seen the pedestrian in the act.

In reviewing the grant of a motion for directed verdict, the reviewing court

> consider[s] the evidence in the light most favorable to the non-movant. . . . [T]he evidence in favor of the non-movant must be deemed true, all conflicts in the evidence must be resolved in his favor[,] and he is entitled to the benefit of every inference reasonably to be drawn in his favor.

*Summey v. Cauthen*, 283 N.C. 640, 647, 197 S.E.2d 549, 554 (1973) (citation omitted).

> "On a motion by a defendant for a directed verdict in a jury case, the court must consider all the evidence in the light most favorable to the plaintiff and may grant the motion only

if, *as a matter of law*, the evidence is insufficient to justify a verdict for the plaintiff."

*Kelly v. Harvester Co.*, 278 N.C. 153, 158, 179 S.E.2d 396, 398 (1971) (quoting 5 Moore's Federal Practice, § 41.13(4) at 1155 (2d ed. 1969)) (emphasis in original).

The issue, then, is whether the evidence summarized above, in the light most favorable to plaintiff, is sufficient to invoke the doctrine of last clear chance.

> All the necessary elements of the doctrine [of last clear chance] are . . . as follows: "Where an injured pedestrian who has been guilty of contributory negligence invokes the last clear chance or discovered peril doctrine against the driver of a motor vehicle which struck and injured him, he must establish these four elements: (1) That the pedestrian negligently placed himself in a position of peril from which he could not escape by the exercise of reasonable care; (2) that the motorist knew, or by the exercise of reasonable care could have discovered, the pedestrian's perilous position and his incapacity to escape from it before the endangered pedestrian suffered injury at his hands; (3) that the motorist had the time and means to avoid injury to the endangered pedestrian by the exercise of reasonable care after he discovered, or should have discovered, the pedestrian's perilous position and his incapacity to escape from it; and (4) that the motorist negligently failed to use the available time and means to avoid injury to the endangered pedestrian, and for that reason struck and injured him. [Citing 26 cases as authority]."

*Clodfelter v. Carroll*, 261 N.C. 630, 634-35, 135 S.E.2d 636, 638-39 (1964) (quoting *Wade v. Sausage Co.*, 239 N.C. 524, 525, 80 S.E.2d 150, 151 (1954)).

It is undisputed that plaintiff, a sixty-two-year-old woman with loss of right field vision in both eyes, placed herself in a position of helpless peril when she attempted to cross West Hill Avenue without benefit of traffic control signals or a marked pedestrian crosswalk. Though it appears that defendant did not actually know of plaintiff's presence in the roadway, " 'a motorist upon the highway does owe a duty to all other persons using the highway, including its shoulders, to maintain a lookout in the direction in which the motorist is traveling.' " *Watson v. White*, 309 N.C. 498, 505, 308

S.E.2d 268, 273 (1983) (quoting *Exum v. Boyles,* 272 N.C. 567, 576, 158 S.E.2d 845, 852-53 (1968) ). Expert testimony indicated that automobile headlights would illuminate a person six feet off the side of the road from a distance of 150 feet. Thus, there is ample evidence from which the jury could determine that the second element of the *Clodfelter* test — that defendant-wife knew or by the exercise of reasonable care could have discovered plaintiff's perilous position — was met.

The primary focus of the trial court's ruling, and the thrust of Judge Lewis's dissent, was that evidence satisfying the third element of the *Clodfelter* test is absent. The trial court concluded that defendant-wife, once she became aware of plaintiff's presence, "did all she could." In dissent, Judge Lewis concluded that although "plaintiff may have had a last 'possible' chance to avoid injury, she did not have the last 'clear' chance." *VanCamp v. Burgner,* 99 N.C. App. 102, 106, 392 S.E.2d 453, 456 (1990) (Lewis, J., dissenting). The essence of this element, and the fundamental difference between a "last clear chance" and a "last possible chance," is that defendant must have "*the time and the means* to avoid the injury to the plaintiff by the exercise of reasonable care after she discovered or should have discovered plaintiff's perilous position." *Watson,* 309 N.C. at 505-06, 308 S.E.2d at 273 (emphasis added). The reasonableness of a defendant's opportunity to avoid doing injury must be determined on the particular facts of each case. *See Exum v. Boyles,* 272 N.C. at 575, 158 S.E.2d at 852.

In *Wanner v. Alsup,* 265 N.C. 308, 144 S.E.2d 18 (1965), this Court found sufficient evidence to take the issue of last clear chance to the jury where plaintiff, dressed in white, walked across the street without benefit of a pedestrian crosswalk. Plaintiff was visible to defendant from a distance of approximately 320 feet, defendant was traveling approximately thirty to thirty-five miles per hour, and the street was straight with unobstructed vision. The defendant in that case, as here, did not reduce his speed, sound the horn, apply the brakes, or turn his car in any manner whatsoever. *Id.* at 309, 312, 144 S.E.2d at 19, 21; *see also Earle v. Wyrick,* 286 N.C. 175, 209 S.E.2d 469 (1974) (sufficient evidence to support last clear chance where defendant had unobstructed view from several hundred feet, traveling twenty-five to thirty miles per hour, but did not see plaintiff until "a split second" before impact); *cf. Watson,* 309 N.C. 498, 308 S.E.2d 268 (no evidence of last clear chance where defendant is traveling forty miles per hour, sees

plaintiff only upon coming out of a curve, has only 1.28 seconds to react before impact, and only seventy-five feet in which to stop); *Battle v. Chavis*, 266 N.C. 778, 147 S.E.2d 387 (1966) (no evidence of last clear chance where defendant, traveling at thirty to thirty-five miles per hour, could not see plaintiff until within 130 feet; less than three seconds to react and stop).

In the light most favorable to plaintiff, the evidence here indicates that plaintiff was within defendant's clear line of sight for five seconds before the collision. Further, there is expert testimony that defendant had "ample" reaction time in which to see plaintiff and come to a complete stop, thereby avoiding harm to plaintiff. Thus, from plaintiff's evidence, a jury reasonably could infer both that defendant had the time and means to avoid the collision, and that defendant negligently failed to use the available time and means to avoid injury to plaintiff. Thus, we cannot conclude as a matter of law that plaintiff's evidence was insufficient to invoke the doctrine of last clear chance.

For the foregoing reasons, the decision of the Court of Appeals is

Affirmed.

Justice MEYER dissenting.

Believing that the plaintiff, who was contributorily negligent as a matter of law, has failed to make out a case of last clear chance, I respectfully dissent.

The plaintiff and her husband were employed to deliver newspapers. In the dark, early morning hours of a winter day, 16 December 1986, plaintiff's husband stopped his van in the right-hand lane of the highway across the street from plaintiff's residence. His vehicle was parked on the shoulder of the road with the wheels on the white line of the roadway. At this point on the highway, there are no signal lights or marked crossovers. Plaintiff is a sixty-two-year-old woman who, unfortunately, prior to this accident, suffered impaired vision and memory loss and, from moment to moment, forgot where she was. At trial, plaintiff's husband described her condition as follows:

A. She had an aneurysm.

Q. Could you explain that a little bit please?

A. Well, it's a supposedly congenital defect in an artery, in this case, in an artery in her brain that [in] 1970 broke, which was a stroke that she recovered from spontaneously, though it left her essentially in the condition she is now.

Q. Could you tell us what that is please?

A. Loss of vision to the right in both eyes, an area something like this that extends to the center vision. And from a visual shield chart, there's little holes here and there in that vision which is no peripheral vision at all to the right.

Q. How else has it affected Betsy?

A. And she has the short term memory loss. She is alert enough at any one given moment. I think of it as someone looking in life with a very small flashlight of their attention which when she's focused, she's all right. But a moment later, she, it's a continuity problem. Moment later focus some place else, and she forgets where she was a moment before.

Plaintiff's condition is further reflected in her husband's testimony describing what happened earlier in the morning, just prior to the accident:

A. We wake up about, little before six and fix breakfast, get dressed and all of that. And then about 6:30 as usual, this was a little bit later this morning, probably 6:35 maybe. And she is very methodical as she has to be to keep organized at all, and so she goes through a checklist.

Q. A checklist?

A. She's got it on the wall, her apron and her, when she calls a mumble book which is how she keeps track of things. She has a little book just like this and she writes everything. She puts that away in her back pocket, so on and lays out her raincoat and so on. And she was still doing that when I went out and started the car . . . .

Plaintiff's husband was unable to say whether his wife looked both ways before entering the highway, but he did testify that:

A. No, it would be very unusual if she just came right across. She has to pay more attention than most people just to do normal things.

Q. She has to pay?

A. If she had look down the road, she would have had to look so her left vision was looking down the road because she has no right vision in that direction.

. . . .

Q. Could you describe her speed of walk on that particular occasion?

A. Normal I think. Little old lady walking.

Plaintiff stepped from the curb without looking in either direction, crossed one lane of traffic, and had started across the other lane of traffic when she was struck by defendant-wife, who was traveling only twenty to twenty-five miles per hour.

Assuming, as all the parties to this action have, that the negligence of both parties is well established, I believe that plaintiff has failed to prove the last two elements necessary to invoke the doctrine of last clear chance:

"(3) that the motorist had the *time and means* to avoid injury to the endangered pedestrian by the exercise of reasonable care after he discovered, or should have discovered, the pedestrian's perilous position and his incapacity to escape from it; and (4) that the motorist negligently failed to use the available *time and means* to avoid injury to the endangered pedestrian, and for that reason struck and injured him."

*Clodfelter v. Carroll*, 261 N.C. 630, 635, 135 S.E.2d 636, 639 (1964) (emphasis added) (quoting *Wade v. Sausage Co.*, 239 N.C. 524, 525, 80 S.E.2d 150, 151 (1954)), relied upon by the majority.

The majority says that the plaintiff placed herself "in a position of helpless peril when she attempted to cross [the roadway]." I take the position that the plaintiff's position was not perilous until she stepped into defendant-wife's lane of travel. Even if she had seen the plaintiff earlier, defendant-wife, going twenty to twenty-five miles per hour and not knowing or having any reason to anticipate that plaintiff was impaired visually and mentally, could not foresee that plaintiff would, without stopping or looking, step from a position of safety in the left lane directly into defendant's line of travel. Until the instant plaintiff stepped into defendant-wife's lane of traffic, defendant-wife, going at such a slow rate

of speed, could assume plaintiff would stop. At that point, the defendant-wife did not have even the two seconds the majority gives her to react. She reacted instantly upon seeing the plaintiff and swerved in an attempt to miss her.

The accident report, the physical evidence, and the testimony presented show that when defendant-wife first saw plaintiff in her headlights just before impact, she swerved in an attempt to avoid the plaintiff and show that, in fact, plaintiff was struck by the far right-hand fender of defendant's vehicle. Plaintiff's husband's testimony confirms this:

Q. Okay. You skipped a part. She gets three quarters of the way across the road. Mrs. Burgner is coming in this direction.

A. Right, and so as she said, she hit her on the right fender; and Betsy landed about here; and Mrs. Burgner was, I suppose as she swerved, I wasn't looking at her at that point, swerved to here; and I saw her car parked right here across the road.

. . . .

Q. Regardless of how far it was from the road, there was not room for Mrs. Burgner to miss Mrs. Vancamp by coming on the side of your van. She could not have gotten between the van?

A. She would have hit her in the middle of the car and she would have properly [sic] swerve to the left because my wife was on the right fender.

The evidence of defendant-wife's speed at twenty to twenty-five miles per hour is undisputed in the evidence. The defendant-wife's testimony was that as soon as she saw the plaintiff in the road, she applied her brakes and turned to avoid the accident. This evidence is unrefuted by any evidence to the contrary. The trial judge, in allowing defendants' motion for directed verdict, said: "In this case as soon as she saw the plaintiff, she did all . . . she could . . . ." Neither the majority of the panel below nor the majority of this Court has made a convincing showing that defendant-wife here had either the *time* or the *means* to avoid the injury to the plaintiff.

While I am convinced that the majority has failed to demonstrate that plaintiff satisfied the third and fourth elements of the doctrine

of last clear chance, it may also be that the plaintiff has also failed to prove the second element:

> "(2) that the motorist knew, or by the exercise of reasonable care could have discovered, the pedestrian's perilous position and his incapacity to escape from it before the endangered pedestrian suffered injury at his hands . . . ."

*Clodfelter v. Carroll*, 261 N.C. at 634-35, 135 S.E.2d at 639 (quoting *Wade v. Sausage Co.*, 239 N.C. at 525, 80 S.E.2d at 151).

> If the defendant does not discover the plaintiff's situation, but merely might do so by proper vigilance, it is obvious that neither party can be said to have a "last clear" chance. The plaintiff is still in a position to escape, and his lack of attention continues up to the point of the accident, without the interval of superior opportunity of the defendant, which has been considered so important. The plaintiff may not reasonably demand of the defendant greater care for his own protection than that which he exercises himself. Accordingly, the nearly universal rule is that there can be no recovery.

Prosser and Keeton on Torts § 66, at 467 (5th ed. 1984) (footnotes omitted).

Although there may be evidence that plaintiff was within defendant-wife's line of sight and could have been seen for five seconds, there was no evidence that plaintiff was in a helpless, perilous position for five seconds. Plaintiff was not in a perilous position until she walked directly in front of defendant-wife's car. At that point, there was insufficient time and distance for any driver using reasonable care to avoid the impact.

The elements necessary to invoke the doctrine of last clear chance have not been demonstrated to exist in this case. I vote to reverse the decision of the Court of Appeals and to reinstate the judgment of the trial court.

Justices MITCHELL and MARTIN join in this dissenting opinion.