CAROLYN LAVERNE WOMACK, Plaintiff-Appellant v.
EMMA McMANUS STEPHENS, Defendant-Appellee

No. COA00-661

(Filed 5 June 2001)

**1. Negligence— contributory—pedestrian struck by automobile**

The trial court did not err by granting a directed verdict for defendant on the issue of plaintiff's contributory negligence in an action arising from a collision between a pedestrian and an automobile where plaintiff, after consuming alcohol, was crossing outside a marked crosswalk at night, in an area that was dimly lit, dressed in dark clothing, with the lanes of oncoming traffic unob-

structed and plaintiff's headlights shining, and never looked toward the oncoming vehicles despite the imminent presence of two vehicles coming upon her.

## 2. Negligence— last clear chance—pedestrian struck by automobile

The trial court erred by failing to instruct the jury on last clear chance in an action arising from a collision between a pedestrian and an automobile where there was sufficient evidence of plaintiff's negligent failure to pay attention to her surroundings and to discover her imminent peril, the evidence establishes that defendant saw plaintiff and recognized plaintiff's position of peril, there was evidence raising an inference that defendant had the time and means to avoid hitting plaintiff, and evidence was presented from which a jury could infer that defendant negligently failed to use the available time and means to avoid plaintiff.

Appeal by plaintiff from order entered 1 February 2000 by Judge W. Douglas Albright in Guilford County Superior Court. Heard in the Court of Appeals 28 March 2001.

*Donaldson & Black, P.A., by Rachel Scott Decker, for plaintiff-appellant.*

*Frazier & Frazier, L.L.P., by Torin L. Fury, for defendant-appellee.*

TYSON, Judge.

Carolyn Womack ("plaintiff") appeals the trial court's entry of a directed verdict in favor of Emma McManus Stephens ("defendant"). We reverse, and award plaintiff a new trial.

On 24 September 1995, plaintiff was injured when struck by defendant's vehicle as plaintiff attempted to cross by foot the 200-block of South English Street in Greensboro, North Carolina. The collision occurred at approximately 1:30 a.m. In this block, South English Street is a straight, four-lane road with two northbound lanes and two southbound lanes separated by a double yellow line. The posted speed limit is 35 miles per hour.

Witness, Eugene Siler ("Siler") was driving his vehicle in the outer, right-hand southbound lane of South English Street at approx-

imately 1:30 a.m. Siler testified he was traveling at an approximate speed of 35-38 miles per hour. Defendant was driving her vehicle approximately two car-lengths behind Siler in the same lane.

At about this time, plaintiff attempted to cross the southbound lanes of South English Street. Plaintiff had crossed the two northbound lanes of the street without incident. Plaintiff did not cross South English Street in a marked pedestrian crossing or at an intersection. Plaintiff testified that she had lived near South English Street for several years, and that she knew there were crosswalks located a quarter of a mile north, and another located a quarter of a mile south from where she attempted to cross. There was one street light in the vicinity of where plaintiff attempted to cross, but no light directly where plaintiff entered the road. Siler testified that where plaintiff was crossing there was "only one street light, and it's not directly from where [plaintiff] was crossing. It's real dim, dark, from where [plaintiff] was trying to cross."

Plaintiff had crossed the center line of the two southbound lanes when Siler's car approached in the outer, right-hand southbound lane. Siler testified that at first, he did not see plaintiff, who was wearing a black coat and blue jeans. But as Siler approached plaintiff in the street, he "caught like a little flash of [plaintiff's] shirt." Siler testified that he began to brake immediately, and swerved to the right to avoid hitting plaintiff. Siler stated that as he swerved, he heard defendant hit her brakes. He further testified that, from his rear view mirror, he saw that "[defendant] didn't have time to swerve, and she started going in the opposite direction." Siler stated that it was only "moments after [he] hit [his] brakes and swerved" that "[defendant] started screeching her horn," but that "[defendant] hit her brakes . . . probably about—about 10, 15 seconds later."

As Siler approached plaintiff in the right-hand lane, plaintiff backed up to the dividing line of the two southbound lanes. The investigating officer, B.S. Williamson ("Officer Williamson"), testified that the evidence showed defendant was traveling behind Siler. As Siler began to brake, defendant moved into the left-hand, inner southbound lane to avoid colliding with Siler. At the same time, plaintiff moved back toward the center of the southbound lanes, where the right-hand corner of defendant's car hit plaintiff. Siler testified that plaintiff never looked at him, but simply backed up to the dividing line of the two southbound lanes and into defendant's line of travel.

Defendant told Officer Williamson that she could not see plaintiff until she began to move into the left-hand lane. Defendant further stated that her brakes locked, and that she did not have enough time to avoid hitting plaintiff. Officer Williamson testified that the skid marks from defendant's car began in diagonal fashion near the center line, indicating that defendant braked just as she started to pass Siler in the left-hand lane. He further testified that the total length of the skid mark was 75 feet long, and 31.7 feet before impact, beginning in defendant's lane of travel and crossing over the center line. The front right hood of defendant's car was damaged.

Evidence was presented tending to establish that plaintiff had consumed alcohol during the day and evening leading up to the accident. Plaintiff testified that on the evening before the accident, 22 September 1995, she consumed a combination of marijuana, cocaine, and beer. Plaintiff testified that she slept that night, and resumed drinking beer when she awoke on 23 September 1995, the day leading up to the accident. Plaintiff consumed beer that day and evening, and she testified that she "was going to drink more beer with a friend" at the time of the accident.

Siler testified that after the collision, he approached plaintiff as she lay in the street. He testified that plaintiff was yelling and trying to stand, but that she could not stand because her leg was broken. He stated that plaintiff "had a real strong smell of alcohol on her breath."

At the close of plaintiff's evidence, defendant moved for a directed verdict. The trial court granted defendant's motion on 1 February 2000. Plaintiff appeals.

---

The sole issue on appeal is whether the trial court erred in directing a verdict in favor of defendant. We agree with defendant that the evidence establishes plaintiff's contributory negligence as a matter of law. However, we hold that the trial court erred in failing to submit the issue of last clear chance to the jury.

Our standard of review on the grant of a motion for directed verdict is "whether, upon examination of all the evidence in the light most favorable to the nonmoving party, and that party being given the benefit of every reasonable inference drawn therefrom, the evidence is sufficient to be submitted to the jury." *Fulk v. Piedmont Music Center*, 138 N.C. App. 425, 429, 531 S.E.2d 476, 479 (2000) (citing *Abels v. Renfro Corp.*, 335 N.C. 209, 214-15, 436 S.E.2d 822, 825

(1993)). A directed verdict should be granted in favor of the moving party only where " 'the evidence so clearly establishes the fact in issue that no reasonable inferences to the contrary can be drawn,' and 'if the credibility of the movant's evidence is manifest as a matter of law.' " *Law Offices of Mark C. Kirby, P.A. v. Industrial Contractors, Inc.*, 130 N.C. App. 119, 123, 501 S.E.2d 710, 713 (1998) (quoting *Lassiter v. English*, 126 N.C. App. 489, 493, 485 S.E.2d 840, 842-43, *disc. review denied*, 347 N.C. 137, 492 S.E.2d 22 (1997)).

## I. Contributory Negligence

[1] Plaintiff assigns error to the trial court's grant of defendant's motion for directed verdict on grounds that defendant did not establish plaintiff's contributory negligence as a matter of law. We disagree.

In *Wolfe v. Burke*, 101 N.C. App. 181, 398 S.E.2d 913 (1990), this Court outlined the common law and statutory duty of a pedestrian in crossing a road:

> In North Carolina, a pedestrian has 'a common law duty to exercise reasonable care for his own safety by keeping a proper lookout for approaching traffic before entering the road and while on the roadway.' *Whitley v. Owens*, 86 N.C. App. 180, 182, 356 S.E.2d 815, 817 (1987). Further, N.C. Gen. Stat. § 20-174(a) (1989) provides that a pedestrian 'crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles upon the roadway.'

*Id.* at 185, 398 S.E.2d at 915. The *Wolfe* court noted that a plaintiff's failure to yield a right of way in violation of G.S. § 20-174(a) is not contributory negligence *per se*, but that such failure is " 'evidence of negligence to be considered with other evidence in the case in determining whether the plaintiff is chargeable with negligence which proximately caused or contributed to his injury.' " *Id.* at 186, 398 S.E.2d at 916 (quoting *Dendy v. Watkins*, 288 N.C. 447, 456, 219 S.E.2d 214, 220 (1975)). "Even though failing to yield the right-of-way to an automobile is not contributory negligence *per se*, it may be contributory negligence as a matter of law." *Id.* at 186, 398 S.E.2d at 916 (citing *Meadows v. Lawrence*, 75 N.C. App. 86, 330 S.E.2d 47 (1985), *affirmed*, 315 N.C. 383, 337 S.E.2d 851 (1986)).

The trial court must direct a verdict for the defendant "when all the evidence so clearly establishes [plaintiff's] failure to yield the

right of way as one of the proximate causes of his injuries that no other reasonable conclusion is possible." *Ragland v. Moore*, 299 N.C. 360, 364, 261 S.E.2d 666, 668 (1980) (quoting *Blake v. Mallard*, 262 N.C. 62, 65, 136 S.E.2d 214, 216 (1964)); *see also, e.g., Brooks v. Francis*, 57 N.C. App. 556, 291 S.E.2d 889 (1982) (judgment as a matter of law proper where uncontroverted evidence shows that plaintiff's failure to use due care was at least one proximate causes of plaintiff's injuries.).

In *Meadows, supra,* this Court held that the plaintiff was contributorily negligent as a matter of law where the evidence showed that the plaintiff's negligence in crossing a highway was at least one proximate cause of the accident. *Meadows,* 75 N.C. App. at 90, 330 S.E.2d at 50. In that case, the evidence in the light most favorable to the plaintiff revealed the following: that plaintiff was standing in the defendant's highway lane of travel; that the defendant, with his vehicle headlights burning, turned onto the highway at a distance at least 100 feet from the plaintiff; that the road was straight and visibility unobstructed; and that just before impact the defendant's vehicle was traveling at about 43 miles per hour. *Id.*

This Court found significant that "between the time [defendant's] car turned onto the highway and the time of the collision, [plaintiff] took one or two steps towards the center of the road." *Id.* We noted that it was the "plaintiff's duty to look for approaching traffic before she attempted to cross the highway. Having started, it was her duty to keep a lookout for it as she crossed." *Id.* at 89, 330 S.E.2d at 50 (emphasis supplied) (quoting *Blake v. Mallard,* 262 N.C. 62, 65, 136 S.E.2d 214, 216-7. *Accord Garmon v. Thomas,* 241 N.C. 412, 85 S.E.2d 589 (1955) (plaintiff was negligent in failing to keep a "timely lookout")). We stated:

> The courts of this State have, on numerous occasions, applied the foregoing standard of due care when the plaintiff was struck by a vehicle while crossing a road at night outside a crosswalk. If the road is straight, visibility unobstructed, the weather clear, and the headlights of the vehicle in use, a plaintiff's failure to see and avoid defendant's vehicle will consistently be deemed contributory negligence as a matter of law. See *Price v. Miller*, 271 N.C. 690, 157 S.E.2d 347 (1967); *Blake v. Mallard; Hughes v. Gragg,* 62 N.C. App. 116, 302 S.E.2d 304 (1983); *Thornton v. Cartwright,* 30 N.C. App. 674, 228 S.E.2d 50 (1976).

*Id.* at 89-90, 330 S.E.2d at 50.

In *Price*, our Supreme Court held that the plaintiff's intestate was contributorily negligent as a matter of law where the evidence showed that the decedent was crossing the road at night and without the benefit of a crosswalk. *Price*, 271 N.C. at 696, 157 S.E.2d at 351-52. The defendant's vehicle was approaching the decedent at a rate of 60 miles per hour in a 55 mile per hour zone, on a straight stretch of road, and with the vehicle headlights shining. *Id.* In holding that any liability for defendant's negligence was precluded by the plaintiff's own negligence, the Supreme Court stated:

> If defendant were negligent in not seeing plaintiff's intestate, who was dressed in dark clothes, in whatever length of time he might have been in the vision of her headlights, then plaintiff's intestate must certainly have been negligent in not seeing defendant's vehicle as it approached, with lights burning, along the straight and unobstructed highway. We must conclude that plaintiff's intestate saw defendant's automobile approaching and decided to take a chance of getting across the road ahead of it, or in the alternative, that he not only failed to yield the right of way to defendant's automobile, but by complete inattention started across the highway without looking. In any event . . . plaintiff's intestate's negligence was at least a proximate cause of his death.

*Id.* (citations omitted).

We also hold that the evidence in this case establishes that plaintiff's own negligence was <u>at least one</u> proximate cause of her injuries. The evidence shows that plaintiff was attempting to cross the southbound lanes of South English Street at 1:30 a.m. in an area that was dimly lit. The evidence further shows that plaintiff was not crossing the street in a marked crosswalk, or at an intersection, despite knowing that crosswalks were located a quarter of a mile north and south of where plaintiff actually crossed. Plaintiff wore dark clothes and had been drinking alcohol for most of the day and evening leading up to the accident. Plaintiff was in route to drink more alcohol with a friend.

Officer Williamson testified that the 200-block of South English Street is a straight road, and its view is not obstructed by hills or curves. Plaintiff also testified that South English Street is a straight road. Defendant testified that her headlights were working on low beam at the time of the accident. Siler corroborated defendant's testimony, stating that he could see defendant's headlights in his rearview mirror. Siler further testified that at no time did plaintiff

look toward his oncoming vehicle. Evidence also established that the oncoming vehicles were traveling at approximately 35 miles per hour, the posted speed limit.

In summary, the evidence reveals that plaintiff, after consuming alcohol, was crossing outside of a marked crosswalk at night, in an area that was dimly lit, dressed in dark clothing, that the lanes of oncoming traffic were straight and unobstructed by curves or hills, and that defendant's headlights were shining. Plaintiff never looked toward the oncoming vehicles, despite the imminent presence of two vehicles coming upon her, and despite her duty to maintain a proper lookout for approaching vehicles. Under the reasoning in *Meadows* and *Price*, such evidence constitutes contributory negligence as a matter of law. *See also*, *Thornton*, 30 N.C. App. at 676, 228 S.E.2d at 52 ("Following *Price*, we hold that even if defendant was negligent in failing to see and avoid plaintiff's decedent, plaintiff's decedent was also contributorily negligent as a matter of law in failing to see and avoid defendant. The motion for directed verdict was correctly granted."). The trial court did not err in directing a verdict in favor of defendant on the issue of plaintiff's contributory negligence.

## II. Last Clear Chance

[2] Plaintiff assigns error to the trial court's grant of defendant's motion for directed verdict on grounds that plaintiff presented sufficient evidence to submit the issue of last clear chance to the jury, notwithstanding plaintiff's contributory negligence. We agree.

We re-emphasize that in reviewing the grant of a directed verdict, we view the evidence in the light most favorable to plaintiff, giving plaintiff the benefit of every reasonable inference to be drawn therefrom. *See Fulk*, 138 N.C. App. at 429, 531 S.E.2d at 479. "The issue of last clear chance, '[m]ust be submitted to the jury if the evidence, when viewed in the light most favorable to the plaintiff, will support a reasonable inference of each essential element of the doctrine.'" *Kenan v. Bass*, 132 N.C. App. 30, 32-33, 511 S.E.2d 6, 7 (1999) (quoting *Trantham v. Sorrells*, 121 N.C. App. 611, 468 S.E.2d 401, *disc. review denied*, 343 N.C. 311, 471 S.E.2d 82 (1996)).

In *Vancamp v. Burgner*, 328 N.C. 495, 402 S.E.2d 375, *reh'g denied*, 329 N.C. 277, 407 S.E.2d 854 (1991), our Supreme Court enumerated the elements that a plaintiff must establish to invoke the doctrine of last clear chance:

**WOMACK v. STEPHENS**

[144 N.C. App. 57 (2001)]

'All the necessary elements of the doctrine [of last clear chance] are . . . as follows: 'Where an injured pedestrian who has been guilty of contributory negligence invokes the last clear chance or discovered peril doctrine against the driver of a motor vehicle which struck and injured him, he must establish these four elements: (1) That the pedestrian negligently placed himself in a position of peril from which he could not escape by the exercise of reasonable care; (2) that the motorist knew, or by the exercise of reasonable care could have discovered, the pedestrian's perilous position and his incapacity to escape from it before the endangered pedestrian suffered injury at his hands; (3) that the motorist had the time and means to avoid injury to the endangered pedestrian by the exercise of reasonable care after he discovered, or should have discovered, the pedestrian's perilous position and his incapacity to escape from it; and (4) that the motorist negligently failed to use the available time and means to avoid injury to the endangered pedestrian, and for that reason struck and injured him. [Citing 26 cases as authority].'

*Id.* at 498, 402 S.E.2d at 376-77 (quoting *Clodfelter v. Carroll*, 261 N.C. 630, 634-35, 135 S.E.2d 636, 638-39 (1964)).

In *Nealy v. Green*, 139 N.C. App. 500, 534 S.E.2d 240 (2000), this Court stated that in order to satisfy the first element of the doctrine of last clear chance, a plaintiff must be contributorily negligent, consisting of the plaintiff's " 'failure to pay attention to [the plaintiff's] surroundings and discover [the plaintiff's] own peril.' " *Id.* at 505, 534 S.E.2d at 244 (quoting *Williams v. Odell*, 90 N.C. App. 699, 704, 370 S.E.2d 62, 66, *disc. review denied*, 323 N.C. 370, 373 S.E.2d 557 (1988)). Evidence that a plaintiff does not see an approaching vehicle or is not facing an oncoming vehicle will satisfy this element, "our courts reasoning that the pedestrian who did not apprehend imminent danger 'could not reasonably have been expected to avoid injury.' " *Id.* at 506, 534 S.E.2d at 244 (quoting *Watson v. White*, 309 N.C. 498, 505, 308 S.E.2d 268, 272 (1983)).

In *Vancamp*, we noted that a pedestrian who is attempting to walk across a street, and is about to walk in front of an oncoming vehicle, is "obviously in peril before she steps directly in front of the car." *Vancamp v. Burgner*, 99 N.C. App. 102, 104, 392 S.E.2d 453, 455 (1990), *affirmed*, 328 N.C. 495, 402 S.E.2d 375 (1991). We stated further that the driver of an automobile has a duty to look ahead and outside her immediate lane of travel to see a plaintiff, who is about to step into the driver's lane of travel. *Id.*

In the present case, plaintiff was attempting to cross the south-bound lanes of South English Street in an area that was dimly lit, without the benefit of a crosswalk, and having consumed alcohol throughout the day and evening. Plaintiff testified that when she saw Siler's car approaching, she "just backed back up." Plaintiff testified that, "[i]t just scared me, stunned me, so, I backed back up." Siler testified that plaintiff never looked at him, and that plaintiff simply "just backed up in front of [defendant]." Thus, plaintiff was not facing defendant's oncoming vehicle. Such evidence is sufficient to establish plaintiff's negligent failure to pay attention to her surroundings and to discover the imminent peril involved in backing into the center of the two southbound lanes, and into defendant's line of travel.

The *Nealy* court held that the second element of the doctrine was satisfied where the defendant testified he noticed the plaintiff walking on the road and that he could not see the plaintiff's face. The court found such evidence was sufficient to create a reasonable inference that the defendant knew the plaintiff was not looking towards traffic and could not see the defendant's vehicle approaching. *Nealy*, 139 N.C. App. at 506, 534 S.E.2d at 244.

Here, the evidence showed that defendant saw plaintiff in her line of travel prior to hitting plaintiff. Defendant testified that she first saw plaintiff "about the same time" as she noticed Siler's vehicle slowing. Defendant testified that she saw that plaintiff "was already out there in the middle of the street," and that defendant tried "to move to keep from bumping [Siler] so he wouldn't hit [plaintiff]." Defendant further testified that as she swerved, she saw plaintiff "backing up into [her] path." The evidence establishes that defendant saw plaintiff and recognized plaintiff's position of peril as plaintiff, *facing another direction, began to back into defendant's line of travel.*

The *Nealy* court further held that this element could be satisfied even if a defendant did not actually recognize the plaintiff's peril, since a defendant "owe[s] plaintiff a duty to maintain a proper lookout whereby, through 'the exercise of reasonable care, [he] could have discovered plaintiff's perilous position.' " *Id.* at 506-07, 534 S.E.2d at 244 (quoting *Watson*, 309 N.C. at 505, 308 S.E.2d at 272-73). The evidence in this case is such that a jury may reasonably infer that defendant recognized plaintiff's position of peril and inability to escape imminent danger.

In order to satisfy the third element of the doctrine, a plaintiff must show that the defendant " 'had the time and means to avoid the

injury to the plaintiff by the exercise of reasonable care after [she] discovered or should have discovered plaintiff's perilous condition.' " *Id.* at 507, 534 S.E.2d at 245 (quoting *Watson,* 309 N.C. at 505-06, 308 S.E.2d at 273). "The reasonableness of a defendant's opportunity to avoid doing injury must be determined on the particular facts of each case." *Vancamp,* 328 N.C. at 499, 402 S.E.2d at 377.

Defendant testified that she saw plaintiff in the street "about the same time" that Siler began to slow to avoid hitting plaintiff. Defendant testified that she swerved to avoid hitting Siler, but that as she swerved, she saw plaintiff "backing up into [her] path." Siler testified that it was only "moments after [he] hit [his] brakes and swerved" that "[defendant] started screeching her horn," but that "[defendant] hit her brakes . . . probably about—about 10, 15 seconds later."

This evidence, taken as a whole and considered in the light most favorable to plaintiff, raises an inference that defendant had the time and means to avoid hitting plaintiff. The evidence shows defendant knew, for several seconds, that plaintiff was in the middle of the road, that defendant sounded her horn upon swerving to the left, but that 10 to 15 seconds passed before defendant applied her brakes to avoid hitting plaintiff.

In holding that the third element of the doctrine had been satisfied, the *Nealy* court found significant that the defendant, in attempting to avoid the plaintiff, had "pulled into the left lane only slightly notwithstanding that such lane was free of oncoming traffic and defendant could safely have proceeded farther." *Id.* at 508, 534 S.E.2d at 245; *see also, Knote v. Nifong,* 97 N.C. App. 105, 108, 387 S.E.2d 185, 187, *disc. review denied,* 326 N.C. 597, 393 S.E.2d 879 (1990) (third element established by testimony that, if defendant had moved vehicle further across highway, plaintiff's motorcycle would have been able to get by defendant's vehicle, thereby avoiding collision).

In this case, the evidence shows that plaintiff was standing near the center of the two southbound lanes. No other vehicles were approaching from behind defendant in either the right of left-hand lanes. As in *Nealy,* the evidence raises an inference that defendant could have taken further evasive action to avoid hitting plaintiff.

Viewing this evidence in the light most favorable to plaintiff, a jury could infer that the fourth element of the doctrine has been met: that defendant negligently failed to use the available time and means

to avoid plaintiff, and for that reason, the plaintiff was injured. We hold that the trial court should have instructed the jury on the issue of last clear chance.

We again emphasize, as we stated in *Nealy*, "that our holding the evidence to have been sufficient to require submission of a last clear chance issue to the jury does not compel an affirmative answer to the issue by the jury . . . as some contradictory evidence was introduced." *Id.* at 511, 534 S.E.2d at 247. Such contradictions are for the jury to determine. *Id.* "Failure to submit the issue of last clear chance when supported by substantial evidence is error and requires a new trial." *Hales v. Thompson*, 111 N.C. App. 350, 356, 432 S.E.2d 388, 392 (1993).

New trial.

Judges WALKER and HUNTER concur.