CAROL CORBETT, Plaintiff,
v.
CHERRY GRAY, Defendant.
No. COA07-1239
North Carolina Court of Appeals
Filed June 3, 2008
This case not for publication
John J. Korzen for plaintiff.[1]
Larcade & Heiskell, PLLC, by Christopher N. Heiskell, for defendant.
ELMORE, Judge.
Carol Corbett (plaintiff) sued Cherry Gray (defendant) for negligence following a car accident. A jury found that plaintiff was injured by defendant's negligence, but that plaintiff, by her own negligence, contributed to her injury. The trial judge entered a judgment that plaintiff receive nothing and that it would determine costs and fees at a later date. The trial judge laterentered an order awarding costs in the amount of $3,437.00 against plaintiff and in favor of defendant. Plaintiff now appeals.
On 7 February 2005, the parties were involved in a car accident at the intersection of Garner Station Boulevard and U.S. Highway 401 in Garner. Plaintiff was traveling east on Garner Station Boulevard and defendant was traveling south on U.S. Highway 401. The parties disagree as to what happened immediately preceding the accident, but ultimately defendant drove her car into the driver's side of plaintiff's car.
Plaintiff filed a complaint alleging that, as a result of defendant's negligence, plaintiff was severely injured and suffered the total loss of her vehicle. She asked for a sum in excess of $10,000.00 for her personal injuries and property damage, fees and costs, a bench trial, and any other relief deemed appropriate by the court. Defendant answered, alleging contributory negligence and demanding a jury trial. Plaintiff answered that even if she were found to be contributorily negligent, defendant had the last clear chance to avoid the collision. At the close of all of the evidence, plaintiff moved for a directed verdict on the issue of contributory negligence. She argued that defendant had failed to establish liability on plaintiff's part because defendant's testimony was "inconsistent all over the place." The trial court denied the motion for directed verdict, and submitted the questions of negligence and contributory negligence to the jury. Plaintiff asked the court to submit the issue of last clear chance to thejury. The trial court denied this request, stating "I don't think that the evidence supports this instruction."
Plaintiff first argues that the trial court erred by denying her motion for a directed verdict on the issue of contributory negligence. "In ruling on the motion, the trial court must consider the evidence in the light most favorable to the nonmoving party, giving him the benefit of all reasonable inferences to be drawn therefrom and resolving all conflicts in the evidence in his favor." Martishius v. Carolco Studios, Inc., 355 N.C. 465, 473, 562 S.E.2d 887, 892 (2002) (citation and quotations omitted) (emphasis added). "If there is more than a scintilla of evidence supporting each element of the non-moving party's claim, the motion for a directed verdict should be denied." Hoffman v. Oakley, ___ N.C. App. ___, ___, 647 S.E.2d 117, 122 (2007) (citations omitted). The moving party "bears a heavy burden under North Carolina law." Martishius, 355 N.C. at 473, 562 S.E.2d at 892. We apply the same standard as the trial court. Rowan County Bd. of Educ. v. U.S. Gypsum Co., 332 N.C. 1, 16, 418 S.E.2d 648, 658 (1992).
"Our Supreme Court has previously stated that two elements, at least, are necessary to constitute contributory negligence. The defendant must demonstrate: (1) a want of due care on the part of the plaintiff; and (2) a proximate connection between the plaintiff's negligence and the injury." Oakes v. Wooten, 173 N.C. App. 506, 511, 620 S.E.2d 39, 43-44 (2005) (citations, quotations, and alterations omitted). We hold that defendant presented more than a scintilla of evidence to support each of these elements. Defendant testified at one point that she had a green light when she entered the intersection.[2] She reasons that this testimony, "taken in the light most favorable to Defendant-Appellee, would tend to establish that Plaintiff-Appellant entered the intersection against a red light." Although plaintiff testified that she had the green light, and defendant also offered contradictory testimony that she did not see the light before entering the intersection, we must resolve all contradictions in favor of defendant, the non-moving party. Accordingly, defendant presented sufficient evidence that plaintiff failed to exercise due care by entering the intersection on a red light.
As to the question of causation, plaintiff testified that she did not see defendant's car until it hit her. She also stated during her deposition that she did not "actually stop and look left and right" before proceeding through the intersection. Plaintiff later clarified, "I looked around. I didn't see her," and "I didn't just take off. I looked around and it's a big open intersection." However, we are again bound to resolve these contradictions in favor of defendant. Any ambiguities in plaintiff's testimony relate to her credibility, which is an issue for the jury to resolve. See Maxwell v. Michael P. Doyle, Inc., 164 N.C. App. 319, 327, 595 S.E.2d 759, 764 (2004) ("[A]ny inconsistencies in plaintiff's descriptions of the agreement relate to his credibility  an issue for the jury to resolve."). It isnot unreasonable to infer that plaintiff proximately caused her own injury if she indeed entered an intersection against a red light without looking to the left or right. The trial court did not err by denying plaintiff's motion for directed verdict.
Plaintiff next argues that the trial court erred by denying her request to submit the issue of last clear chance to the jury. "The issue of last clear chance must be submitted to the jury if the evidence, viewed in the light most favorable to the plaintiff, will support a reasonable inference of each essential element of the doctrine." Bass v. Johnson, 149 N.C. App. 152, 158, 560 S.E.2d 841, 845 (2002) (citations omitted) (emphasis added). The essential elements of the doctrine of last clear chance are:
(1) that the plaintiff negligently placed [her]self in a position of helpless peril; (2) that the defendant knew or, by the exercise of reasonable care, should have discovered the plaintiff's perilous position and [her] incapacity to escape from it; (3) that the defendant had the time and ability to avoid the injury by the exercise of reasonable care; (4) that the defendant negligently failed to use available time and means to avoid injury to the plaintiff and (5) as a result, the plaintiff was injured.
Parker v. Willis, 167 N.C. App. 625, 627, 606 S.E.2d 184, 186 (2004) (citations omitted).
Defendant concedes that plaintiff negligently placed herself in a position of helpless peril and that plaintiff suffered injuries. Accordingly, we examine the remaining three elements while viewing the evidence in the light most favorable to plaintiff. Plaintiff testified that she was stopped at a red light, and when the light turned green, the car to her left made a left turn onto U.S. 401. After the car to her left turned, plaintiff proceeded straight across the intersection. She testified that she looked around before driving forward and was aware of what was going on around her. Plaintiff said that the car making the left turn successfully drove through the intersection without hitting another car. Defendant testified that before she entered the intersection, she was blinded by the sun. She testified, "I'm telling you that the sun blinded me, and I didn't see the light change." She also testified that the sun continued to blind her until "[j]ust before the collision." She stated during her deposition that it was possible that the light could have been red when she entered the intersection. Plaintiff's counsel and defendant engaged in the following colloquy regarding defendant's actions while she was blinded by the light:
Q. And once the sun blinded you, you didn't immediately hit the brakes, did you?
A. If I had immediately hit the brakes, that would have caused more wrecks.
Q. And how would that  how would you have caused more wrecks?
A. People behind me would have ran over me.
The evidence is sufficient to support a reasonable inference that defendant should have discovered plaintiff's perilous position in the intersection, but that she did not discover plaintiff's perilous position because she was blinded by the sun. We have held that "[w]hen a motorist travels into a completely blinded area for two or three seconds, with the knowledge that his vision has failed him, such behavior will be contributory negligence as a matter of law." Williams v. Hall, 100 N.C. App. 655, 659, 397 S.E.2d 767, 769 (1990) (citations omitted). We have also noted that contributory negligence on the part of a party "could be inferred in that he continued driving with the blinding sun in his face . . . ." Clark v. Moore, 65 N.C. App. 609, 611, 309 S.E.2d 579, 581 (1983). In Clark, we held that the plaintiff was entitled to all reasonable inferences to be drawn from the evidence, and that the "jury could, and apparently did, infer that [the] plaintiff was exercising the ordinary care required of a reasonably prudent person who finds himself driving with blinding sunlight in his face." Id. Here, it is the defendant who was driving with the blinding sunlight in her face, and she is not entitled to the inference that she was exercising the ordinary care required of a reasonably prudent person who finds herself driving with blinding sunlight in her face. Plaintiff is entitled to the reasonable inference that defendant was not exercising such care, and that defendant should have seen plaintiff in the intersection, helpless to avoid defendant's oncoming car.
Plaintiff argues that defendant had the time and ability to avoid the injury by the exercise of reasonable care because defendant entered the intersection blind, and did not slow down or take any action, such as lowering the sun visor, to improve her visibility. "The reasonableness of a defendant's opportunity to avoid doing injury must be determined on the particular facts of each case." VanCamp v. Burgner, 328 N.C. 495, 499, 402 S.E.2d 375, 377 (1991) (citing Exum v. Boyles, 272 N.C. 567, 575, 158 S.E.2d 845, 852 (1968)). Defendant argues that plaintiff's argument fails on this third element because plaintiff offered no evidence as to whether defendant had the time to avoid hitting plaintiff. She asserts that plaintiff "offered absolutely no evidence as to stopping time, stopping distance, speed, or any evidence regarding how much time Defendant-Appellee had to observe Plaintiff-Appellant's vehicle." Defendant supports her position that she did not have enough time to avoid plaintiff's car by referencing the diagram in the accident report, which she states indicates that defendant's car hit plaintiff's "just a few feet" from where plaintiff entered the intersection, and after defendant "had crossed five lanes of travel." The diagram is not drawn to scale, and there are no markings to indicate distance. A review of plaintiff's exhibits, which include photographs of the intersection, reveals that the stop line of the lane that plaintiff was traveling in is set well back from the actual intersection of the two streets. A conservative estimate is that the stop line is one and a half car lengths from Highway 401. The photograph of plaintiff's car shows that it was hit squarely on the driver's side door. Although both parties testified that defendant had traveled almost the entire length of the intersection, crossing five lanes of traffic, before hitting plaintiff, it is clear from the photographs that plaintiff had traveled a fair distance  at least two car lengths  from the stop line before being struck. Defendant's own testimony that she went into the intersection blind, that she had already crossed five lanes of traffic when she hit plaintiff, and that she was blind until "just before the collision" suggest that if she had not been blinded or if she had taken some other precautionary measure once she became blinded, she could have prevented the accident. She would have seen the car to plaintiff's left proceeding across the intersection and therefore would have been alerted to the possibility that other cars, specifically plaintiff's, would also pull into the intersection, and that she should take care. She also would have seen that her light was red and not proceeded into the intersection. If she had seen that her light was red and proceeded into the intersection anyway, then she would have inferred that other drivers, such as plaintiff, would have green lights and would be driving into the intersection across her path and that she might have to take evasive action to avoid hitting them. "Accordingly, the jury could have inferred that defendant, having the duty to keep a proper lookout, negligently failed to keep that lookout, thus causing the collision and plaintiff's injuries." Parker, 167 N.C. App. at 629, 606 S.E.2d at 187.
The fourth element of the doctrine of last clear chance is that the defendant negligently failed to use available time and means to avoid injury to the plaintiff. The answer to the question of "how much" time a person needs to avoid a collision depends on the individual circumstances of each person and each collision. Our Supreme Court has held that a "split second" is sufficient time to avoid a collision. Earle v. Wyrick, 286 N.C. 175, 178, 209 S.E.2d 469, 471 (1974). However, it has also held that 1.28 seconds was not sufficient time to avoid a collision. Watson v. White, 309 N.C. 498, 506, 308 S.E.2d 268, 273 (1983). In Watson, the defendant could not have seen the plaintiff until 1.28 seconds before the collision because she was driving around a curve in the road. In Earle, the driver could have seen the children that she hit much earlier if she had been keeping a proper lookout because the road was straight and the weather was clear; it happened that she did not see the children until "a split second" before she hit them. Here, had defendant not been driving blindly, she would have had ample time to see that her light was red, that other cars were crossing the intersection, and that plaintiff had driven the distance from the stop line to the edge of Highway 401 and was entering the intersection. As in Earle, it just happened that she did not see those things because she was not maintaining a proper lookout.
The evidence, when viewed in the light most favorable to plaintiff, supports a reasonable inference of each element of the doctrine of last clear chance. Accordingly, the trial court erred by refusing to submit the issue to the jury. "Failure to submit the issue of last clear chance, when proper, is reversible error that mandates a new trial." Bass, 149 N.C. App. at 158, 560 S.E.2d at 845 (citations omitted). Accordingly, we reverse the judgment of the trial court and remand for a new trial. We also vacate the trial court's 8 May 2007 order awarding costs to defendant. Reversed and remanded.
Judge STROUD concurs.
Judge HUNTER concurs in result only.
Report per Rule 30(e).
NOTES
[1] We recognize Jennifer H. Avriett, a third-year law student at Wake Forest University School of Law, who argued plaintiff's case at oral arguments. Ms. Avriett appeared upon plaintiff's motion pursuant to Subchapter C of the Rules and Regulations of the North Carolina State Bar.
[2] We acknowledge that defendant's testimony was inconsistent, but we recite the facts here in the light most favorable to defendant.