An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-509

NORTH CAROLINA COURT OF APPEALS

Filed: 7 January 2014

JAMES C. BURGESS, III,
    Plaintiff,

v.

RANDI L. DORTON,
    Defendant.

Union County
No. 11 CVS 2342

Appeal by Plaintiff from order entered 4 December 2012 by Judge Anna Mills Wagoner in Union County Superior Court. Heard in the Court of Appeals 8 October 2013.

> *Price, Smith, Hargett, Petho & Anderson, by Wm. Benjamin Smith, and Archibald Law Office, by C. Murphy Archibald, for Plaintiff.*

> *Robinson Elliott & Smith, by William C. Robinson, and Katherine A. Tenfelde, for Defendant.*

DILLON, Judge.

James C. Burgess, III (Plaintiff), appeals from the trial court's order denying his motion for a new trial. We affirm.

I. Factual & Procedural Background

Plaintiff commenced this action in Union County Superior Court, seeking damages he sustained when the bicycle he was riding

collided with an automobile driven by Randi L. Dorton (Defendant) on the evening of 6 November 2010. Defendant filed an answer, generally denying Plaintiff's allegations of negligence and raising contributory negligence as a defense to Plaintiff's claim. The matter came on for trial in Union County Superior Court on 13 August 2012, at which time the trial court allowed Plaintiff to amend his complaint to plead that even if his negligence had contributed to the accident, he was nevertheless entitled to recover for his injuries based upon Defendant's "last clear chance" to avoid the accident.

Plaintiff testified at trial that he "could see real well" when he mounted his silver Colnago road bicycle on the evening in question and embarked upon a route he had traveled "hundreds of times" previously. Plaintiff rode his bicycle eastbound along a two-lane rural, country road in Union County at a speed of approximately eight miles per hour. Plaintiff wore a blue jacket with "a large white V on the front"; a helmet; black bicycle shoes; and black "luminite" pants, which Plaintiff testified had reflective qualities that should have made him visible to motorists. Plaintiff rode without any safety lights on the front or rear of his bicycle and without any safety reflectors on the seat, handle bars, or spokes of the bicycle.

Defendant testified that "it was dusk" and "getting pretty dark" when she left her shift as a prison correctional officer in Polkton, North Carolina, shortly after 6:00 p.m. that evening. Defendant drove approximately forty-five minutes towards her boyfriend's house, which was located on the aforementioned two-lane country road. Defendant testified that her headlights were on and that they were set to automatically adjust as lighting conditions changed. Defendant presented evidence indicating that the sun set that evening at 6:24 p.m.

Defendant drove westbound towards Plaintiff, as Plaintiff rode his bicycle eastbound, on the right hand side of the road, towards Defendant. Defendant testified that it was "very dark" by the time she approached her boyfriend's house. Defendant rounded a curve in the road and, as she came out of the curve, drove "fairly slow" as she approached her boyfriend's driveway.

Defendant started to make a left-hand turn (across the road) into the driveway. Defendant testified that, as she made the turn, her vehicle collided with Plaintiff, knocking the driver's side mirror off her vehicle and knocking Plaintiff off his bicycle. Defendant testified that although her headlights were on, she did not see Plaintiff until the moment of impact. Plaintiff likewise testified that he neither saw nor heard Defendant's vehicle prior

to the moment of impact, and, further, that he could not even identify the direction in which Defendant had been traveling at the time. Plaintiff also testified that he "could see fairly well" at the time of the accident, though he subsequently testified that he could see "really well out there." Plaintiff also introduced into evidence a video recording that he had made with his wife upon returning to the scene of the accident, asserting that the video was indicative of the lighting conditions at the time of the accident.

The parties dispute the time period that elapsed between the accident and the arrival of Emergency Medical Technicians (EMTs) and the first responding police officer, Trooper Brian Kirkpatrick of the North Carolina Highway Patrol. Plaintiff testified that the EMTs arrived at the scene approximately fifteen minutes after the accident and that Trooper Kirkpatrick arrived shortly thereafter. Defendant, in contrast, averred that Trooper Kirkpatrick arrived at the scene only one to two minutes after the accident occurred, at 6:48 or 6:49 p.m. Trooper Kirkpatrick testified that Plaintiff was "[h]ard to see" when he arrived at the scene of the accident; that Plaintiff did not appear to be wearing any reflective clothing; and that there was "nothing on the bike that reflected."

On 16 August 2012, the jury returned verdicts concluding that

Plaintiff had been injured as a result of Defendant's negligence, but that Plaintiff's own negligence had contributed to his injuries. Significantly, the trial court had declined to instruct the jury on the last clear chance doctrine upon concluding that there was insufficient evidence in support thereof, and thus the jury did not make any determination on this issue. Accordingly, Plaintiff was barred from recovering for any of the damages he had incurred as a result of the accident. The trial court entered a judgment consistent with the jury's verdicts on 22 August 2012.

On 31 August 2012, Plaintiff moved for a new trial pursuant to Rule 59 of the North Carolina Rules of Civil Procedure, contending that he had presented sufficient evidence to submit the issue of last clear chance to the jury. Following a hearing on the matter, the trial court entered an order denying Plaintiff's motion on 4 December 2012. From this order, Plaintiff appeals.

## II. Analysis

Plaintiff contends (1) that the trial court erred in failing to instruct the jury on the doctrine of last clear chance; and (2) that the trial court erred in denying his motion for a new trial, which Plaintiff had asserted based upon the trial court's alleged error in failing to submit the issue of last clear chance to the jury. Because Plaintiff's arguments both raise the same

substantive issue concerning whether application of the last clear chance doctrine was supported by the evidence presented at trial, we address them together; and, for the reasons that follow, we uphold the trial court's order.

"The issue of last clear chance '[m]ust be submitted to the jury if the evidence, when viewed in the light most favorable to the plaintiff, will support a reasonable inference of each essential element of the doctrine.'" *Culler v. Hamlett*, 148 N.C. App. 372, 379, 559 S.E.2d 195, 200 (2002) (citations omitted) (alteration in original). Our Supreme Court has articulated the elements that a plaintiff must establish to invoke the doctrine of last clear chance as follows:

> Where an injured pedestrian who has been guilty of contributory negligence invokes the last clear chance or discovered peril doctrine against the driver of a motor vehicle which struck and injured him, he must establish these four elements: (1) That the pedestrian negligently placed himself in a position of peril from which he could not escape by the exercise of reasonable care; (2) that the motorist knew, or by the exercise of reasonable care could have discovered, the pedestrian's perilous position and his incapacity to escape from it before the endangered pedestrian suffered injury at his hands; (3) that the motorist had the time and means to avoid injury to the endangered pedestrian by the exercise of reasonable care after he discovered, or should have discovered, the pedestrian's perilous position and his incapacity to escape from it; and (4) that the motorist negligently failed to

> use the available time and means to avoid injury to the endangered pedestrian, and for that reason struck and injured him.

*Wade v. Jones Sausage Co.*, 239 N.C. 524, 525, 80 S.E.2d 150, 151 (1954) (citations omitted). "[U]nless all the necessary elements of the doctrine of last clear chance are present, the case is governed by the ordinary rules of negligence and contributory negligence." *Culler*, 148 N.C. App. at 379, 559 S.E.2d at 200. Further, where the last clear chance doctrine does apply, "the focus is not on the preceding negligence of the defendant or the contributory negligence of the plaintiff which would ordinarily defeat recovery. Rather, the doctrine . . . contemplates that if liability is to be imposed the defendant must have a last 'clear' chance to avoid injury." *Id.* at 379, 559 S.E.2d at 200-01 (citations and quotation marks omitted).

Defendant's negligence and Plaintiff's contributory negligence have been established and are not at issue on appeal. The question for this Court is whether the evidence, when viewed in the light most favorable to Plaintiff, was sufficient to establish each element of the last clear chance doctrine. We conclude that it was not.

Plaintiff was required to show that Defendant "had the time and means to avoid injury to [Plaintiff] by the exercise of

reasonable care after he discovered, or should have discovered, [Plaintiff's] perilous position and his incapacity to escape from it." *Wade*, 239 N.C. at 525, 80 S.E.2d at 151. "The essence of this element, and the fundamental difference between a 'last clear chance" and a 'last possible chance," is that defendant must have '*the time and the means* to avoid the injury to the plaintiff by the exercise of reasonable care after she discovered or should have discovered plaintiff's perilous position.'" *Vancamp v. Burgner*, 328 N.C. 495, 499, 402 S.E.2d 375, 377 (1991) (quoting *Watson v. White*, 309 N.C. 498, 505-06, 308 S.E.2d 268, 273 (1983)) (emphasis in original). "The reasonableness of a defendant's opportunity to avoid doing injury must be determined on the particular facts of each case. *Id.* (citing *Exum v. Boyles*, 272 N.C. 567, 575, 158 S.E.2d 845, 852 (1968)).

Here, Defendant testified that she saw Plaintiff through her driver's side window just as her vehicle struck him. Plaintiff similarly testified that he saw Defendant's vehicle at or about the moment of impact and was thus unable to avoid the resulting collision. In other words, the undisputed evidence indicated that the accident was imminent and unavoidable by the time Defendant actually saw Plaintiff and Plaintiff actually saw Defendant. Further, whatever opportunity Defendant had to avoid the accident,

if any, was minimized by Plaintiff's inconspicuous attire, which Trooper Kirkpatrick described as "black clothing" with "nothing . . . that reflected . .. whatsoever."[1]  We conclude that these circumstances distinguish the present case from cases in which a last clear chance instruction was proper due to the defendant's ability to avoid the accident at the last moment, *e.g.*, *Vancamp*, 328 N.C. at 500, 402 S.E.2d at 377-78 (holding that a last clear chance instruction was warranted where the evidence indicated that plaintiff was within defendant's "clear line of sight for five seconds before the collision"; that defendant "had 'ample' reaction time in which to see plaintiff and come to a complete stop"; and that "defendant negligently failed to use the available time and means to avoid injury to plaintiff"), and align this case with cases in which the defendant's lack of ability to avoid the accident rendered an instruction on last clear chance improper, *e.g.*, *Watson v. White*, 309 N.C. 498, 308 S.E.2d 268 (1983) (holding that there was insufficient evidence of defendant's last clear chance to avoid the accident where defendant was traveling forty miles per hour, saw plaintiff only after coming out of a curve in

---

[1] We note that with only a cold record before us, we lack the perspective that the trial court had in observing first-hand the clothing worn by Plaintiff at the time of the accident.

the road, and had only 1.28 seconds to react before impact); *Battle v. Chavis*, 266 N.C. 778, 147 S.E.2d 387 (1966) (holding insufficient evidence of last clear chance where defendant was traveling at thirty to thirty-five miles per hour and was unable to see plaintiff until within 130 feet of him, at which time he had less than three seconds to stop in order to prevent the injury); *Culler*, 148 N.C. App. at 380, 559 S.E.2d at 201 (holding that the motorist-defendant may have had the last possible chance, but not the last clear chance, to avoid injuring the pedestrian-plaintiff where the weather was "foggy and dark," the defendant had rounded a curve in the road just prior to the scene of the accident, and headlights facing the defendant obstructed the defendant's view). We accordingly hold on the facts presented that the trial court did not err in declining to instruct the jury on the doctrine of last clear chance and, further, did not err in denying Plaintiff's motion for a new trial.

### III. Conclusion

In light of the foregoing, we affirm the trial court's 4 December 2012 order.

NO ERROR IN PART; AFFIRMED IN PART.

Judges McGEE and McCULLOUGH concur.

Report per Rule 30(e).